SURGHENOR et al. v. AYERS et al.†

(Court of Civil Appeals of Texas. Galveston. May 23, 1911. Rehearing Denied June 15, 1911.)

1. TRESPASS TO TRY TITLE (§ 41*)—EVIDENCE —SUFFICIENCY.

Evidence in trespass to try title *held* to sustain findings that plaintiffs did not assert title until they sued, and that a certain conveyance was made.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 41.*]

2. APPEAL AND ERROR (§ 742*)—REVIEW.

A point presented by a proposition under an assignment of error, but not presented by the assignment, cannot be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

3. TAXATION (§ 529*)—PAYMENT—EVIDENCE.

The fact that one in possession of land under claim of ownership, under registered deeds, rendered it for taxation from 1847 to 1859, warrants the presumption of payment of the taxes, in the absence of a contrary showing; he being dead and the tax records destroyed.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 982–984; Dec. Dig. § 529.*]

4. LIMITATION OF ACTIONS (§ 148*)—ADMISSION—SCOPE.

An agreement for partition of land, reciting an unsettled claim by the heirs of a third person, and providing that one of the partners would settle with the heirs, so that the other would receive his allotment clear, was not such acknowledgment of the heirs' title as to prevent running of limitations against them.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 597–603; Dec. Dig. § 148.*]

5. APPEAL AND ERROR (§ 1071*)—HARMLESS ERROR.

In trespass to try title, any error in finding that plaintiffs' claim was barred by limitation was harmless, when the judgment for defendants is authorized under doctrine of presumptive conveyance.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. § 1071.*]

Appeal from District Court, Liberty County; L. B. Hightower, Judge.

Trespass to try title by John W. Surghenor and others against T. P. Ayers and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

F. M. Spann, E. B. Pickett, Jr., and Jas. E. Ferguson, for appellants. Ira P. Jones and G. W. Tharp, for appellees.

REESE, J. This is an action of trespass to try title instituted by John W. Surghenor and others, on January 1, 1903, against T. P. Ayers and others, for the recovery of two certain tracts of land in Liberty county, Tex., described in the petition as a tract of 640 acres out of leagues 6 and 9, and 345 acres out of league 9, all in the Jose Dolores Martinez 11-league grant.

The defendants pleaded general demurrer and general denial, and the statutes of limitation of three, five, and ten years, in bar of the action. Defendants J. S. and Z. S. Johnson also, by cross-action, set up that they were the owners of the land; that plaintiffs' claim was a cloud upon their title, which they prayed to have removed. There were also certain claims against the warrantors which do not affect this appeal. By supplemental petition, plaintiffs set up the disability of minority and coverture as to certain parties under whom they claim title, in reply to the defense of limitation interposed by defendants. The case was tried by the court without the assistance of a jury, and resulted in a judgment for defendants, from which judgment plaintiffs prosecute this appeal.

The court prepared and filed conclusions of fact and law, which are incorporated in the record. Appellants claim title as the sole surviving heirs of Wm. Hardin and his wife, Sarah A. Hardin, and their two children, Jane O. Hardin and Joseph W. Hardin. Appellees claim title under James Davis, who claimed title by deed of conveyance from the original grantor, Jose Dolores Martinez.

The following facts found by the trial court are adopted by us as authorized and supported by the evidence; no objection being presented to any of the findings by appellees and those presented by appellants being overruled, as shown, by conclusions upon certain assignments of error. The first two paragraphs of the findings are omitted, being merely a statement of the pleadings.

"(3) It was admitted that the plaintiffs are the sole surviving heirs of Wm. Hardin and his wife, Sarah A. Hardin, and their

two children, Jane O. Hardin and Joseph W. Hardin, all deceased.

"(4) On August 30, 1830, Jose Dolores Martinez petitioned the Governor of Coahuila and Texas to concede him by way of sale 11 leagues of land, which petition was granted on March 16, 1831.

"(5) September 7, 1832, Jose Dolores Martinez entered into a contract with Adolph Sterne and Charles Taylor, residents of the jurisdiction of Nacogdoches, by which he agreed to sell the said 11 leagues of land, which he had acquired by means of purchase from the Mexican government, and to transfer to them as soon as he had obtained formal possession of the same.

"(6) On April 14, 1833, Adolph Sterne, in the town of San Felipe, before an officer appeared and executed an instrument reciting that, whereas the citizen Jose Dolores Martinez, on September 7, 1832, had obligated himself to the grantor and his 'partner,' Charles Taylor, to sell the 11 leagues of land which he had, by means of a sale from the Mexican government, obtained March 16, 1831, and reciting the payment of $1,000 to him by Wm. Hardin, and that the said Sterne, for himself and his companion, the said Taylor, transfers to the said Hardin said writ of sale and all its obligations, rights, and actions, which in it are expressed, etc., and substitutes the said Hardin in his stead, with all of said obligations and actions, and confers upon him absolute power, etc.

"(7) Upon the petition of Hardin to the government, made on November 11, 1833, the formal and final extension of title to said 11 leagues was issued to Wm. Hardin, as attorney for Jose Dolores Martinez, November 28, 1833.

"(8) Wm. Hardin died in June, 1839, in Liberty county, Tex. Administration was taken out by his widow on his estate in Galveston county, Tex., some time thereafter, and the evidence does not disclose that said administration was ever closed. None of the heirs of Wm. Hardin, deceased, have lived in Liberty county since the Civil War.

"(9) The widow, Sarah A. Hardin, married O. P. Kelton in 1840, and again became a widow on death of said O. P. Kelton, on the ———— day of ————, 1857.

"(10) Jane O. Hardin, daughter of Wm. Hardin, became of age on the ———— day of ————, 1850, and Joseph W. Hardin, son of Wm. Hardin, became of age on the ———— day of ————, 1852.

"(11) The only evidence of partnership of Adolph Sterne and Charles Taylor adduced on the trial was that recited in the instrument from Sterne to Hardin. On rebuttal the plaintiffs introduced in evidence, over defendants' objection, a copy of the instrument, dated April 10, 1843, between Charles S. Taylor and H. Washington, of one part, and James Davis, of the other part, reciting that the said parties are jointly interested in the 11 leagues of land granted to Wm. Hardin for Jose Dolores Martinez, and reciting that an undivided one-half of the same was held by said Taylor and Washington and the other by said Davis, and reciting that the heirs or representatives of Wm. Hardin have an unsettled claim to a portion of said land on account of his service in locating and surveying, and that the said Taylor and Washington will release 1½ leagues of their undivided one-half of said land to the said Davis, providing that he will settle the aforesaid claim of said Wm. Hardin to the satisfaction of his heirs or other representatives aforesaid, etc. The objection on the part of the defendants is that said instrument was not in their chain of title, and that said instrument was not available to the plaintiffs as an estoppel, nor admission of title.

"(12) The defendants in this case claimed title as follows and supported their claim by the following evidence: The grant from the government, on application of Wm. Hardin, attorney for Jose Dolores Martinez, to 11 leagues of land, issued November 28, 1833, embracing the land in controversy.

"(13) The deed from Jose Dolores Martinez to Charles S. Taylor, dated August 9, 1837, conveying an undivided one-half interest in the 11 leagues, and recorded in Liberty County Deed Records, November 28, 1837, and recorded in the same records April 19, 1844, and again recorded February 15, 1904.

"(14) A deed from Charles S. Taylor to James Davis, June 20, 1846, conveying an undivided one-half interest in the 11 leagues of land, which was recorded in Liberty county, Tex., November 6, 1848, and again April 1, 1890.

"(15) A deed from Jose Dolores Martinez to James Davis, dated April 10, 1843, recorded April 27, 1843, in Polk county, and again in Liberty county, Book H, page 608, conveying a one-half undivided interest in the 11 leagues of land.

"(16) A deed from Jose Dolores Martinez to James Davis, dated December 12, 1850, conveying an undivided one-half interest of the 11 leagues, or 5½ leagues, of the Jose Dolores Martinez grants.

"(17) James Davis took possession of leagues Nos. 9 and 6 and had his improvements upon league No. 9 in 1847, and said leagues adjoin side by side.

"(18) James Davis cultivated a portion of league No. 9 of said land continuously every year thereafter up to the time of his death in 1859. He had one dwelling house and several tenant houses for his slaves and overseers thereon. He had a cotton gin. From 100 to 200 acres were in cultivation during said time. From 1847 to the time of the James Davis' death in 1859, he had said land in his possession. James Davis died in 1859. From 1847 to 1859 the land in question was assessed for taxes by James

Davis, except the 640-acre tract was assessed by James Davis, Jr., from 1851 to 1859, inclusive. On October 5, 1859, the property, including that in controversy, was inventoried as part of the estate of James Davis.

"(19) James Davis claimed said land during his lifetime. Davis hill is well known throughout Liberty county, and is situated on league No. 9 and on the land in controversy. The place was generally known as the James Davis property, and generally reputed for many years as his property.

"(20) The plaintiffs in this case have never asserted title to the property until the commencement of this suit, and have never paid any taxes on the property.

"(21) The 345-acre tract in controversy was sold by the administrator of James Davis, through regular proceedings, to 'William Williams, and from said Williams the title comes down through regular transfers to the defendants J. S. Johnson and Z. S. Johnson.

"(22) James Davis, Sr., conveyed the 640-acre tract to his son, J. K., or James Davis, Jr., some time prior to his death, and about 1851, and James Davis, Jr., resided upon said property and cultivated the same for a period of 20 years. Although no deed has been offered in evidence from James Davis, Sr., to James Davis, Jr., the proof is sufficient to support the existence of `said deed, and from said James Davis, Jr., there is a regular chain of conveyances of the said 640 acres down to J. S. and Z. S. Johnson.

"(23) The taxes on said lands have been paid by defendants and those under whom they claim from 1885 continuously up to and including the year 1909, and J. S. Johnson and Z. S. Johnson have used and occupied said 640 acres for about six years, and are in possession now.

"(24) I further sustain the presumption of the payment of taxes by James Davis and those holding under him from 1847 up to 1861.

"(25) The courthouse of Liberty county, including the deed and court records, was destroyed by fire December 12, 1874. The courthouse or deed records of Polk county and San Jacinto counties were never burned, and leagues Nos. 4, 10, 7, 5, and 3 of Martinez grant are located in San Jacinto county, formerly a part of Polk county, and leagues 2, 8, 6, 9, and 1 of said grant are in Liberty county.

"(26) James Davis conveyed, July 19, 1850, 320 acres of league No. 6 to Reason Green, and said deed was recorded in 1850.

"(27) There were numerous sales by the administrator of the estate of James Davis of parts of leagues Nos. 6 and 9, not embracing the land in controversy, to various persons, and there was a final partition of the estate of James Davis, deceased, among his heirs of the unsold portion of said leagues Nos. 6 and 9, on the 9th day of July, 1875.

"(28) All of said persons so receiving portions of the estate and land under said conveyances have asserted title continuously thereto from the date of the death of James Davis, and from the dates of said conveyances and partition.

"(29) All of the land in controversy is situated in Liberty county, Tex., on the west side of the Trinity river.

"(30) The possession of James Davis was adverse to the plaintiffs and those under whom they claim.

• "(31) The long-continued possession of the land by James Davis and those holding under him and the present owners, and the nonclaim of Wm. Hardin and his heirs for a long period of time, is evidence sufficient to support the presumption of a conveyance or conveyances of the said land from the said Hardin and his heirs to James Davis to the land-in controversy."

From these conclusions of fact, the trial court found that the defendants had title to the land sued for, both by the statute of limitation and upon the presumption of a deed, release, or other instrument conveying to James Davis the interest or title of Hardin's heirs in the land. These conclusions of law are assailed by several assignments of error.

[1] By their first assignment of error, appellants complain of the finding of fact that they had never asserted title to the property until the commencement of this suit. To support their contention, appellants refer to the grant to Wm. Hardin, as attorney in fact for Martinez, and also to the fact that upon the death of Hardin, in 1839, there was entered upon the inventory of his estate "one eleven-league claim, supposed to be one-fourth thereof." Neither statement is inconsistent with the finding that "the plaintiffs in this case" had never asserted title to the land. The conclusion of law of the trial court that "the final extension of title by the government of Coahuila and Texas to Wm. Hardin had the effect to vest in said Hardin, and did vest in him, the full legal title to the land" is not objected to by either party. Such is the construction of the grant, in connection with the deed from Martinez to Sterne and Taylor and from Sterne to Hardin by the Court of Civil Appeals, in Surghenor v. Taliaferro, 98 S. W. 648. So the correctness of this construction of these instruments is not an issue upon this appeal. The court's finding is not that Hardin had never asserted title to the land, nor that his widow, children, and administrator had never done so. If in fact the grant conveyed the full legal title to Hardin, it would seem either that Hardin did not so understand it, or that in some way this full legal title had become vested in Martinez, and Hardin's interest had been converted prior to his death into an undefined claim "supposed to be one-fourth thereof," assuming that the 11-league claim referred to in the inventory was the Martinez grant. This was

not an assertion of title to the land in controversy in the sense in which those terms are used in the fact finding complained of. There is no merit in the assignment, and it is overruled.

[2] The testimony of the wife of J. K. Davis, Jr., fully supports the finding of fact complained of by the second assignment of error, that James Davis, Sr., conveyed the 640-acre tract to his son, J. K. Davis, Jr., some time prior to his death, and about 1851. Appellees introduced in evidence a part of the inventory of the estate of James Davis filed in 1859, in which the statement is made that deceased had conveyed to James Davis, Jr., 640 acres out of the four Martinez leagues. In a deed from Fannie Culmore and husband to Bernard Culmore (in appellees' chain of title), dated June 1, 1874, for this 640 acres of land, it is recited "and known as the James K. Davis homestead, nearer described in a deed of gift from General James Davis to his son, J. K. Davis." In this connection the wife of J. K. Davis testified, in answer to an interrogatory as to a deed to this 640 acres: "I know we had a deed and it was recorded, but I do not know what became of it." She further testified that they lived on the land for 20 years, that she had seen the deed, and that it was executed by General James Davis to his son, her husband. It was further shown that James Davis, Jr., rendered for taxation 640 acres of the Martinez grant each year from 1851 to 1859, as found by the court. There was further testimony as to long possession by J. K. Davis, Jr., of this 640 acres. The admissibility of this evidence to establish the execution and contents of a lost deed, on the ground that a proper predicate had not been laid for its introduction, which seems to be the point presented by the proposition under the assignment, is not presented by the assignment and cannot be considered.

[3] There was no error in the twenty-fourth paragraph of the court's finding of fact, wherein it "sustains the presumption of the payment of taxes by James Davis and those claiming under him from 1847 to 1861." The finding that James Davis rendered the land for taxation from 1847 to 1859, except the 640 acres, which was rendered from 1851 to 1859 by James Davis, Jr., is not complained of. It was further shown that during all of those years the parties, James Davis and his son, James Davis, Jr., were in possession of the land in controversy, openly claiming the same, under deeds duly registered; that they had farms and other extensive improvements thereon which were cultivated; and that there was every indication of full title and ownership. The courthouse in Liberty county had been destroyed by fire in 1874, with all records, thus destroying the means of proving payment of taxes by the county tax rolls. Davis and his son were long since dead. It would have been a most extraordinary circumstance if

tax receipts had been preserved during all of those years. Such was not to be expected. In such case there was no possible means of establishing payment of taxes, except by such circumstances as were adduced, which, we think, afforded a sufficient basis for the presumption that the taxes were paid, in the absence of a single circumstance to indicate the contrary. It was held, in Watson v. Hopkins, 27 Tex. 642, that "the law prescribes no stringent rule requiring proof of payment of taxes by more certain or conclusive evidence than is necessary for the establishing of other facts in the case. It may be shown by either direct or circumstantial testimony of a legitimate character." Ochoa v. Miller, 59 Tex. 462; Allen v. Woodson, 60 Tex. 652; Snowden v. Rush, 69 Tex. 593, 6 S. W. 767. In the case of Hodges v. Ross, 6 Tex. Civ. App. 437, 25 S. W. 975, it seems to have been held that payment of taxes may be presumed from possession. The opinion, however, is rather indefinite on this point.

[4] By the fourth assignment of error, appellants attack the holding of the court that the possession of James Davis was adverse to the appellants and those under whom they claim. Under this assignment the contention is made that the provisions of the memorandum of agreement between Charles S. Taylor and H. Washington of the one part and James Davis of the other, of April 10, 1843, in the partition between them of the 11 leagues, with reference to the unsettled claim of the heirs of Hardin, was such an acknowledgment of their title as prevented the running of the statute of limitation against them. The substance of this agreement is set out in the eleventh paragraph of the conclusions of fact. On April 10, 1843, Taylor and Davis, each of whom owned, by conveyance from Martinez, an undivided one-half interest in the 11 leagues, agreed upon a partition, and in such partition Davis received leagues 6 and 9 and five other leagues, being 1½ leagues more than his share, in consideration of which he undertook, after reciting that the heirs of Wm. Hardin had an unsettled claim to a portion of the land, on account of his services in locating and surveying the grant, procuring title, etc., to settle with the Hardin heirs in such manner as that Taylor should have the four leagues allotted to him clear. This instrument was introduced in evidence by appellants. This at best was not an admission of the title of the heirs of Hardin to the land, but only an admission that they had an unsettled claim to a portion thereof. In the very instrument in which this provision is made, it is stated that one half of the land is held by Taylor and Washington and the other half by Davis. This instrument, executed as it was at that early day, so soon after the making of the grant, throws a flood of light on the entire transaction, and tends to show by its recitals that the grant was not in fact made to Har-

din on his own account, but, as stated in the grant, as agent and attorney for Martinez, and that at most Hardin had only what is shown by the inventory of his estate, made in 1839, immediately after his death, an uncertain interest, by some sort of agreement with Martinez, for his services as locator. This is entirely consistent with the fact that in 1837, before Hardin's death, Martinez conveyed to Taylor one half of the land, which deed was recorded the same year, and also before Hardin's death, and that in 1846 Martinez conveyed the other half of the land to Davis. While all this tends to show that it was not the understanding of Hardin that the grant conveyed the beneficial title at least to him, it certainly shows indubitably that it was not the intention of Taylor and Davis, by the provisions of the instrument of partition referred to, to admit Hardin's title. It does not amount to even a whisper of such admission. It is furthermore most clearly and positively shown by the evidence that Davis in the most positive way asserted his title to the land in controversy from 1847. The assignment is without merit, and is overruled.

By their fifth, seventh, eighth, and ninth assignments of error appellants complain of the court's conclusions of fact and law that the evidence authorized the presumption of conveyances from Hardin and his heirs to James Davis. The following proposition is stated under the assignment: "Trial courts are not authorized to presume the execution of a deed of conveyance, excepting in a case where all the circumstances in proof are consistent with the existence of such conveyance or deed. Where there is ground for reasonable minds to differ as to the existence of a deed, the trial court is not authorized to presume the existence of same." This precise question, arising upon the same facts, was decided by this court a few days ago in the case of Surghenor et al. v. Patrick A. Ducey, 139 S. W. 22. We dispose of the assignments of error and proposition, which are the same as there presented, by the following quotation from our opinion in that case:

"It is, we think, undeniable that in this case all of the circumstances in proof are consistent with the execution of some instrument by reason of which whatever right, title, or claim Wm. Hardin or his heirs had in this land had been extinguished. Notwithstanding the conclusion of law that the extension of the grant vested the title to the 11 leagues in Wm. Hardin by virtue of the contracts of sale from Martinez to Sterne and Taylor, and the transfer thereof to Hardin, it is reasonably clear that Hardin himself made no such claim, nor did his representatives immediately after his death. In four years after the extension of the grant, Martinez conveyed one half of the 11 leagues to Charles Taylor for a consideration of $10,000, and soon thereafter the other half to Davis, and then they made partition, providing for the settlement of Hardin's claim to a locative interest, which Davis was to settle, in consideration of which he received 1½ leagues more than one-half of the grant. This was in 1843. In the inventory of Hardin's estate filed in 1839, his interest in this grant is stated to be one-fourth thereof. Whatever this interest was, the partition agreement between Taylor and Davis bound Davis to settle it, and the long-continued claim of title and possession of Davis and those holding title under him, the openness and notoriety of such claim, as shown by extensive improvements, sale, and recording of deeds, payment of taxes, etc., preclude any idea that such claim was unknown to Hardin's heirs, who, notwithstanding, for nearly 60 years made not a whisper of any adverse claim on their part. The records of Liberty county were destroyed by fire in 1874. This suit was begun in 1903. The facts found by the court upon amply sufficient (most of them upon undisputed) evidence amply justified the further conclusion that the title in Hardin's heirs had been extinguished. Their long acquiescence in the possession and claim of appellees and those under whom they claim cannot be reasonably accounted for upon any other hypothesis. It is hardly going too far to say that the evidence, under the authorities, upon this question compelled such a finding, and that a contrary finding would have been against reason. Fletcher v. Fuller, 120 U. S. 534, 7 Sup. Ct. 667, 30 L. Ed. 759; Herndon v. Vick, 89 Tex. 475, 35 S. W. 141; Taylor v. Watkins, 26 Tex. 695; Manchaca v. Field, 62 Tex. 141; Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033; Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 736.

"It is not true, as stated in the latter part of the proposition referred to, that, 'where there is ground for reasonable minds to differ as to the existence of a deed or conveyance, a trial court is not authorized to presume the existence of the same.' This is tantamount to saying that in such cases the facts and circumstances relied upon must establish the execution of a deed beyond a reasonable doubt, or so conclusively that there is no legal issue upon the question. Establishing the execution of a deed by presumption is in substance and effect proving it by circumstantial evidence, and there is no rule of law that we are aware of that requires the evidence offered for this purpose to be such as to exclude every other reasonable hypothesis than that the deed was executed. It is enough that it is sufficient to render it more reasonable to presume that the deed was executed, than that it was not. Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 742. The doctrine embraced in the portion of the proposition referred to would render it practically impossible ever to establish the execution of a deed by circumstances."

[5] Appellants, under the sixth and ninth

assignments of error, attack the legal conclusion of the trial court that the claim of appellants is barred by limitation. To some extent we think this assignment is well taken, under the fact findings. The court finds that Davis, Sr., went into possession of leagues 9 and 6 in 1847, having his improvements on league 9, and that he cultivated the land every year until 1859, and that he rendered and paid taxes on the land. He was holding under a duly recorded deed. The greater part, but not all, of the 640 acres was on league 9; the remainder being on league 6. All of the 345 acres was on league 9. In 1851 Davis, Sr., conveyed to his son, Davis, Jr., the 640 acres, and his widow testified that the deed was recorded. The trial court finds that Davis, Jr., went into possession of this 640 acres in 1851 and held, used, and cultivated it for 20 years, which would be until 1871. Hardin left his widow and two children, Jane and Joseph W. Jane was under disability of minority until 1850, and Joseph until 1852. Mrs. Hardin remarried in 1840, and again became a widow in 1857. By statute the statute of limitation did not run from January 28, 1861, to March 13, 1870. No other possession such as is necessary to support the statute of limitation will be considered, except as stated in the findings of fact, which are not objected to by appellees. Giving appellees the benefit even of the five-year statute (and the court does not state in his conclusions under which statute the finding is made), there was only (counting out the disabilities as against Mrs. Hardin) the time from her second widowhood in 1857 to 1859—two years—as to the 345 acres; and as to the 640 acres, from some undefined date in 1857 to some undefined date in 1871, less the time from January 28, 1861, to March 13, 1870. It would seem that not even under the five-year statute was Mrs. Hardin barred as to any of the land. The statute ran against Jane from the time she became of age in 1850, and as to the 345 acres she appears to be barred under the five-year statute by the possession of James Davis, Sr., and by both the five and ten year statute as to the 640 acres, by the possession of James Davis, Jr., beginning in 1851. As to Joseph W. Hardin, who became of age at some undefined date in 1852, he appears to be barred under the five-year statute as to both tracts, but not as to either tract under the ten-year statute. The judgment of the trial court, however, is so fully authorized under the doctrine of presumption hereinbefore discussed that the findings as to limitations become immaterial.

We have carefully examined each of the assignments of error and the several propositions thereunder, and our conclusion is that the judgment should be affirmed, and it is so ordered.

Affirmed.