MORRIS et al. v. MOORE et al.　(No. 7717.)

(Court of Civil Appeals of Texas. Galveston. Nov. 5, 1919. Rehearing Denied Dec. 4, 1919.)

1. ADVERSE POSSESSION &#8658;104—PRESUMPTION OF GRANT.

In action to recover land formerly owned by plaintiffs' ancestor wherein defendants claimed their predecessor had purchased land from ancestor prior to act of Fourth Congress of Republic of Texas requiring sale of land to be evidenced by written instrument, evidence of continuous possession under claim of right by defendants and predecessors for more than 70 years, and of no claim being asserted thereto during such time by plaintiffs or ancestor, together with other facts and circumstances, held to raise presumption that such sale had been made.

2. ADVERSE POSSESSION &#8658;95—PRESUMPTION OF PAYMENT OF TAXES.

One who was in possession of land under claim of ownership and under deed duly recorded, and rendered it for taxation during 10-year period, will be presumed, in absence of a contrary showing, to have paid taxes when due; he being dead and the tax records destroyed.

3. ADVERSE POSSESSION &#8658;85(3), 95—SUFFICIENCY OF EVIDENCE TO ESTABLISH FIVE-YEAR STATUTE OF LIMITATIONS.

In action to recover land in which defendants set up the five-year statute of limitations in bar of plaintiffs' right to recover, evidence held to support finding that defendants' predecessor occupied land under a recorded deed and paid taxes thereon for more than five years.

───

&#8658;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Brazoria County; Sam'l J. Styles, Judge.

Suit by Mrs. Mila Morris and others against E. R. Moore, T. L. Smith, and others. Judgment for named defendants, and plaintiffs appeal. Affirmed.

Munson & Williams, of Angleton, E. E. Townes, of Houston, and Oliver J. Todd, of Beaumont, for appellants.

Stevens & Stevens, of Houston, Elmer P. Stockwell, of Angleton, and H. O. Schulz, of Rosenberg, for appellees.

LANE, J. This suit was filed in the district court of Brazoria county, Tex., by Mrs. Mila Morris, Mrs. Polly Carleton, Mrs. Pattie Rector and her husband, E. L. Rector, and Allen Townes, as heirs of R. J. Townes, deceased, on the 18th day of May, 1917, against E. R. Moore, T. L. Smith, and others, to recover a strip of land 200 varas in width and 5,000 varas in length, a part of the A. Darst league in Brazoria county, and being the same awarded to A. Darst, Jr., in the partition of the estate of his father, the original grantee.

The petition was in the usual and ordinary form of petitions in suits of trespass to try title.

By order entered prior to final trial, the suit was disposed of as to all the parties defendant except E. R. Moore and T. L. Smith, and the cause proceeded to trial between the plaintiffs and these two defendants only.

The defendants Moore and Smith each filed an answer. Each disclaimed as to any portion of the land sued for by plaintiffs except those parts thereof claimed by them and described in their respective answers. They also denied generally, pleaded not guilty, and also pleaded the three, five and ten years' statute of limitations in bar of the plaintiffs' right to recover in their suit.

Plaintiffs Mrs. Morris, Mrs. Carleton, and Mrs. Rector, by supplemental petition, each alleged that they were minors at the date of the death of their mother and father, under whom they claim as heirs, who died on the 24th day of August, 1863, and 3d day of October, 1865, respectively, as well as coverture in avoidance of defendants' pleas of limitation. Plaintiff Allen Townes also pleaded his minority in avoidance of such pleas of defendants.

The cause was tried before the court without a jury, and judgment was rendered for defendants.

It is shown that the A. Darst league, of which the land in controversy was a part, was granted to Abraham Darst on the 6th day of May, 1831; that the south one-half of the Darst league was partitioned among the original heirs of A. Darst, by running strips, parallel to its south line, of 200 varas in width and extending from east to west across the league a distance of 5,000 varas; and that these strips were numbered from 1 to 9, inclusive, beginning at the south side of the league, and in the partition of the league strip No. 2, which was the second from the south side, was awarded to A. Darst, Jr.

The plaintiffs claimed the land under a probate sale by the administrator of A. Darst, Jr., to R. J. Townes, who was their father and ancestor in title, and as evidence of said title introduced the following:

A filed paper in the succession of the estate of Abraham Darst, Jr., asking for letters of administration, cause No. 130, on file in the clerk's office of Brazoria county, Tex., filed by R. J. Townes for petitioner on December 27, 1837, addressed to the honorable court of Brazoria county, reading as follows:

"The petition of Samuel Damon respectfully represents that Abraham Darst departed this life in said county some short time since, intestate, leaving no relatives in the ascending or descending line, and possessed of a small estate. That his succession has not yet been opened and is indebted to petitioner. He therefore prays that the succession be opened and that letters be granted to him according to law."

An order of the probate court of Brazoria county, dated December 27, 1837, reading as follows:

"Samuel Damon having this day filed a petition praying for letters of administration in the estate of Abraham Darst, deceased, notice is hereby given with citation to all persons interested to appear at a special term of the court of probate to be held at the court house in Brazoria on the second Monday of January next ensuing, and show court why said letters should not issue as is customary and according to law."

An order of the probate court of Brazoria county, dated January 8, 1838, reading as follows:

"This day was heard the petition of Samuel Damon praying that he be appointed administrator of the estate of Abraham Darst, deceased, and public notice of said petition having been given according to law and no objection being filed, it is ordered, adjudged, and decreed by the court that the prayer of the petition be granted and that letters issue to him as is usual and in conformity to law."

Inventory of said estate, reading as follows:

"Inventory of estate of Abraham Darst, dec'd, 200 acres of land on the Mound league 12 miles from Columbia."

Petition of Samuel Damon, praying for order of sale of 200 acres of land, reading as follows:

"The petition of Samuel Damon, administrator of the estate of Abraham Darst, deceased,

respectfully represents that the assets in his hands and accruing to said estate are insufficient to pay the debts due by the same.

"Wherefore, he prays for decree of the court to make sale of 200 acres of land lying on the Mound league, 12 miles above Columbia and belonging to said estate, upon a credit until the first day of January, next. The petitioner herewith makes an exhibit of the debts of said estate. And will pray."

An order of sale, dated September, 1838, reading as follows:

"This day was heard the petition of Samuel Damon, administrator of the succession of Abraham Darst, deceased, representing that the assets in his hands and accruing to the estate are insufficient to pay the debts due by the estate, and praying for a decree to make sale of 200 acres of land lying on the Mound league, 12 miles above Columbia, and belonging to said estate, upon a credit until the first day of January next, and the said administrator having made exhibit of the debts due by said estate, and the court being satisfied of the correctness of the allegation contained in said petition, it is ordered, adjudged, and decreed that the prayer of the petitioner be granted, and that said land be sold at the door of the courthouse in Brazoria after giving 30 days' notice on a credit until the first day of January next, with bond and security and mortgage on the premises until final payment."

Notice of sale, in the matter of the estate of Abraham Darst, deceased, No. 130, in probate court, Brazoria county, Tex., dated November 15, 1838, which reads as follows:

"Probate Sale. By virtue of a decree of the honorable probate court for the county of Brazoria, I shall offer for sale at the door of the courthouse in the town of Brazoria, on Monday, 10th day of December next, upon a credit until the 1st day of January, next, the following property belonging to the estate of Abraham Darst, deceased, to wit:

"200 acres of land lying in the Mound league 12 miles above Columbia.

"Bond and security will be required and a mortgage on the premises until final payment; the title to be made at the expense of the purchaser.

"Brazoria, Nov. 15, 1838.

"William P. Scott, Judge of Probate Court."

Indorsed on back as follows: "No. 130. Purchased by R. J. Townes, $805."

The petition of Samuel Damon, administrator, asking for discharge as such administrator, together with exhibit thereto attached, and final account, reading as follows:

"To the Hon. Probate Court of Brazoria County:

"The petition of Samuel Damon, administrator of the estate of Abraham Darst, deceased, respectfully represents that he had fully administered said estate and paid all the debts. He therefore presents his account, which he

prays may be received, and that he be discharged from all further liability.

"Jack & Townes.

"Petition granted and administrator discharged.    W. P. Scott, Probate Judge."

Exhibit:

Succession of Abraham Darst, Samuel Damon, Administrator, Dr.

To board of decedent, from the 1st September, 1834, to 1st June, 1836, and funeral expenses..$150 00
To paid clerk's and judge's fees................ 18 00
To paid Jack & Townes, attorneys............. 25 00

Credits.

By sale of 200 acres of land under decree of probate court of Brazoria county, purchased by R. J. Townes at $1.00 per acre........$200 00

And the order of the probate court of Brazoria county, dated December 2, 1840, reading as follows:

"This day came on to be heard the petition of Samuel Damon, administrator of the estate of Abraham Darst, deceased, representing that he has fully administered said estate and paid all the debts, and, having filed his account and exhibits, prays to be discharged from all further liabilities as said administrator, and the court having examined the same and being satisfied of the correctness of allegations in the petition contained, and also having examined the said account and exhibits, it is ordered, adjudged, and decreed by the court that the said account be allowed and recorded, and that the said Samuel Damon be and he is hereby fully discharged from all further liabilities as administrator of said estate on his paying the fees of court."

It was agreed by and between counsel for the parties to this suit that the land described in the plaintiff's petition in this suit was set apart to A. Darst, Jr., in the partition of the estate of A. Darst, Sr.

It was further agreed that Abraham Darst, Jr., is the common source of title to the 200 acres of land in controversy, of which this is a part, and being tract No. 2.

There was no evidence of the execution and delivery of the administrator's deed, but to account for the absence of such proof is shown that the papers of R. J. Townes, deceased, were destroyed by fire shortly after the Civil War.

It was found by the trial court that the probate proceedings, proven upon trial, vested in R. J. Townes title to the 200 acres of land sued for by plaintiffs, independent of the deed. No attack is made on this finding.

From what has been said we think it fair to assume that the case is now before this court in full recognition on the part of defendants of the right of plaintiffs to recover, unless, as found by the trial court, plaintiffs are defeated either:

By the presumption of a transfer or sale from R. J. Townes to Samuel Damon after his purchase at the administrator's sale, or unless, as found by the trial court, the title of Townes or his heirs has been divested by the adverse possession of Samuel Damon or

those claiming and holding under him, or from the fact that plaintiffs, holding only an equitable title, cannot defeat the legal title held by defendants, because they failed to show that defendants were not innocent purchasers.

By the first assignment it is in effect insisted that the court erred in presuming from the facts and circumstances proven upon the trial by purported transfer of title to the land sued for, from R. J. Townes to Samuel Damon, because it appears from the facts proven that the papers of Damon, as well as the deed records of Brazoria county, are intact, and that no such transfer or conveyance of title was found among the papers of Damon or of record in said county, and because there is no evidence whatever of Samuel Damon claiming under a transfer of title from R. J. Townes to himself, but, on the other hand, there is evidence of a claim by Damon under a deed from the heirs of Abraham Darst, Jr., deceased, of date November 22, 1850, by which they conveyed the land in question to him, which was by him filed for record in the deed records of Brazoria county on the 31st day of March, 1853, thus fully explaining the nature and character of Damon's claim and excluding the presumption that he claimed under a transfer or sale from R. J. Townes, deceased.

The contention of appellants more forcibly stated is that there are no facts or circumstances shown from which a transfer or sale by R. J. Townes to Damon can be legally or logically deduced; but, on the contrary, the fact being shown that Damon took a deed from the heirs of Abraham Darst, Jr., by which they conveyed to him the land in question, the presumption that the same land had been theretofore sold and delivered to him by R. J. Townes is refuted, and the possession and holding thereof by him explained and accounted for.

In stating the foregoing contention, in speaking of the purported transfer from Townes to Damon, we have used the words "sold" and "transferred" advisedly, in view of the fact that prior to the act of the Fourth Congress of the Republic of Texas of 1840, making sales of land void unless evidenced by an instrument in writing, lands could be sold orally; no deed of conveyance being necessary for the transfer of title from one to another.

After a most careful consideration of the question presented by the first assignment, we have reached the conclusion that the same should be overruled. We think there was proof of facts and circumstances which would support the presumption of the trial judge that Townes had sold the 200 acres of land sued for by plaintiffs to Damon, after he (Townes) had purchased the same at the administrator's sale. We shall later undertake to set out some of the facts and circumstances which we think tend to support such presumption.

We shall, however, first call attention to the fact that from the 15th day of November, 1838, same being the date of Townes' purchase at the administration sale, to some time in the year 1840, at which time the act of Congress of the Republic of Texas above mentioned went into effect, lands could be lawfully sold and title thereto passed without the execution and delivery of a written conveyance, as this fact might to some extent tend to explain why no deed of conveyance of the land from Townes to Damon was found among the papers of Damon or found of record in Brazoria county, even if the presumed sale took place.

It is shown that of the debts of $175, for the payment of which the land was purported to have been sold to Townes, the attorney representing the administrator Damon, $150 was due to the administrator Damon and $25 only to Townes.

It was shown that R. J. Townes became a resident of Brazoria prior to 1838, and that he continued to reside in said county until the year 1854; that he was during the time he so resided in said county first county judge and later district judge; that he was very intimate with Samuel Damon and was his attorney, and, we may add, presumably to some extent acquainted with his affairs.

The tax records of Brazoria county show no rendition by R. J. Townes, his heirs or legal representatives, of any land in the Darst survey, from the year 1838 to the year 1918, inclusive. The tax records of the State Comptroller's office show that R. J. Townes rendered land for taxation in Brazoria county as follows: 128 acres, presumably in 1839, also 1786 acres same year; 4,136 acres in 1840; 435 and 2,222 acres in 1842; 4,641 in 1843; 5,391 acres in 1844; 8,812 acres in 1845. (The name of the surveys of which these lands were parts were not given.) It is also shown that he rendered a number of tracts of land for taxation in Brazoria county in 1847, shown to be parts of the Parker, Hall, Austin, Demont, Harris, Alsberry, Gray & Moore, Perry, and Mitchell surveys, and none on the Darst survey. These renditions continued down to the year 1865, the year of his death; but there is no evidence whatever tending to show that in any of the years from 1838 to 1865 he rendered any land in the Darst survey for taxation.

It is shown that Samuel Damon rendered for taxation a large number of acres of land in the Darst survey from 1838 to 1873. It is shown that in 1850 Samuel Damon had a part of the land sued for inclosed with a fence, and that in August of that year he had growing thereon a crop of corn, and that he kept same so inclosed and cultivated for every year from 1850 to 1861; that while

he had this land so inclosed, and while he was so cultivating the same from 1850 to 1854, his intimate friend and attorney, R. J. Townes, was residing at Brazoria, and, as before stated, it was shown that neither Townes nor his heirs or legal representatives did any act indicating that they owned the land until this suit was filed in 1917.

The sale and transfer of the title by Townes to Damon to the land sued for by plaintiffs may be established by the existence of circumstances, or by a presumption reasonably arising from the existence of circumstances tending to establish such sale and transfer. Proof of the long and continuous possession, use, and an enjoyment of the land in controversy under a claim of title by defendants and those under whom they claim, together with the evidence that no claim had ever been asserted on behalf of, or by Townes or any one claiming through or under him, until the bringing of this suit some 70 years after Damon took actual possession, together with the other facts proven, is strongly persuasive and of such nature and tendency as to reasonably lead the trial court to presume a sale and transfer from Townes to Damon. Herndon v. Vick, 89 Tex. 469, 35 S. W. 141; Le Blanc v. Jackson, 161 S. W. 60.

[1] It is apparent from what has been said that we have reached the conclusion that the existence of the facts and circumstances stated were amply sufficient to support the presumption of a sale or transfer of the land by Townes to Damon, as found by the trial court.

What has been said fully answers the complaint made by the second assignment, and it is therefore overruled.

The third assignment is that—

"The court erred in finding and holding that Samuel Damon acquired any title to the land in controversy under the statutes of limitation, because there was no evidence of any continuous possession or use of said property by said Samuel Damon for any number of consecutive years sufficient to mature title in him under any of the statutes of limitation of the state of Texas, and because there was no proof of payment of taxes by said Damon, and was no proof of title or color of title to the land."

The trial court, among other things, found that on the 22d day of November, 1850, the sole heirs of Abraham Darst, deceased, conveyed the land in controversy to Samuel Damon; that this conveyance was duly recorded in Brazoria county on the 31st day of March, 1853; that Samuel Damon, under whom the defendants E. R. Moore and T. L. Smith hold the respective parts of said lot No. 2 of the Darst survey, claimed by them in their respective answers, had peaceable, continuous, and adverse possession of said lot No. 2, cultivating the same and paying all taxes thereon from and including the year 1854 to the year 1861, under a deed duly registered, or, that is to say, a period of seven years, said improvements consisting of an inclosed field upon said lot No. 2, and the cultivation of crops thereon annually, said inclosed field being used in connection with the home place of the said Samuel Damon, which was situated upon an adjoining lot of said Darst survey; that there are no tax records showing the payment of taxes in existence in Brazoria county back of the year 1885, the same having been lost, but from the long lapse of time and the fact that Samuel Damon rendered the land in controversy for taxes from the year 1854 to the year 1861, inclusive, for each of said years, that he paid taxes annually as the same accrued upon said premises.

That Samuel Damon held and claimed the land in controversy under a deed duly recorded in the county where the land was situated, is undisputed. That he rendered said land for taxation for the years 1851 to 1861, inclusive, we think is amply supported by the evidence.

E. P. Stockwell testified that he knew the location on the ground of the southern boundary line of the Darst league, and also the east boundary lines of tract No. 2 in controversy, and that there were at the time he testified ridges extending from a point north of the north line of tract No. 2 southward to the most southern line of the Darst league; that these ridges extended across tract No. 2; that they were old ridges, had been there for about 35 to 40 years to his knowledge, and indicated that the land had been cultivated by some one many years before he saw them, but did not know when they were put there.

Mrs. Davis testified that she was born in 1838, that she was at Damon place in 1854 and for many years thereafter, and further testified as follows:

"I could show you where the south line of the Darst league was. It cornered down with Becker and Wheelwright, because the fence is there, and is there now. You can see it from my door. That is about a mile from the old Damon house, that is, the line going east. The other line toward Columbia came down that row of trees, and down the plowed furrows, and the old bed is there now, and the grass has grown over it; but I found the two furrows that Mr. Damon plowed to let the water off— a straight mark to six-mile point. I was living over there, and Mr. Stockwell came to our house and took my sister and me over there, and we went down the long lane, right by the Oates place, and turned off to go to the Bryan house, and in going to the Bryan house we went over the old cornfield ridges. I think that old field fence extended down to that lane or that road that we came down that day last fall when Mr. Stockwell was over there."

Mrs. Nash testified that she was born in 1833; that she visited the family of Samuel

Damon in 1850. Testifying further, she said:

"Last fall I had occasion to go out there with my sister, Mrs. Davis, and Mr. Stockwell, at which time I pointed out to Mr. Stockwell where the old fence was; and my sister, Mrs. Davis, pointed out to him, also, just the same as I had told him it was.

"From 1850 that field was cultivated every year, and he raised fruit trees also, which were where the pasture is now, and the cornfield was down below the orchard towards Columbia, and out back of the house they had the land in cultivation, but I could not tell you how many acres was in cultivation, but I know it was all in cultivation. This land was in cultivation in 1850, 1851, 1852, 1853, 1854, 1855, 1856, 1857, 1858, 1859, 1860, 1861, and all along there. It was in cultivation every year, and when Mr. Damon died they had a fine crop of corn on the place, but I don't know who it belonged to. They raised a crop there every year that the season would permit. Yes, sir; I would be out there every month or two, and sometimes I was there every week, and sometimes twice a month. I was out there every cropping season. Hardly a crop season went by that we were not out there, and I hunted out over the prairie with my husband, and we would always go up to Mr. Damon's. They had that field in cultivation when I went there in the middle of August, 1850, and for every year thereafter until 1861 that field was in cultivation every year."

The first conclusion of the trial court was that it should be presumed from the facts and circumstances proven that R. J. Townes sold the land in controversy to Samuel Damon, and that, as defendants hold under Damon, plaintiff should not recover; and, second, that each of the defendants E. R. Moore and T. L. Smith are entitled to recover from plaintiffs the parts of the land in controversy claimed by them in their respective answers by and under the statute of limitation of five years on account of the occupancy of the land, payment of taxes thereon under a duly recorded deed from the years 1854 to 1861.

In the very able brief of appellants it is very forcibly insisted that—

"Where payment of taxes is made an element of adverse possession, there is no presumption that the claimant has paid them, but he must show this fact; nor does any presumption of payment arise from the fact that the taxes were assessed to the claimant, and no default in payment was shown. On the other hand, in the absence of evidence by the claimant either that taxes assessed on the land were paid by him or that none were assessed, it will be presumed that taxes have been assessed and that he had not paid them."

[2] We have, however, reached the conclusion that the fact that Damon was in possession of the land under the claim of ownership and under deed duly recorded, and rendered it for taxation from 1851 to 1860, inclusive, warrants the presumption of payment of the taxes when due in the absence of a contrary showing; he being dead and the tax records destroyed. Surghenor v. Ayers, 139 S. W. 28; Watson v. Hopkins, 27 Tex. 638–643; Allen v. Woodson, 60 Tex. 652.

In Watson v. Hopkins, above cited, it was held that—

"The payment of taxes is an essential ingredient of a title to land acquired by virtue of the statute of limitations of five years; but the law prescribes no more stringent rule respecting the proof of the payment of the taxes than for the establishment of the other facts in the case. The payment may be shown either by direct or circumstantial evidence of a legitimate character.

"There being evidence tending to prove that the party resisting the title asserted under the statute of limitations had himself, as a tenant of his opponent, been in possession of the land under that title for more than five years, and that he was bound to pay the taxes during that time—these facts should have been left to the jury with liberty to draw such conclusions, with regard to the payment of the taxes, as all the circumstances warranted."

And in Surghenor v. Ayers, supra, it was held that the fact that one in possession of land under claim of ownership, under registered deeds, rendered it for taxation from 1847 to 1859, warranted the presumption of payment of the taxes in the absence of a contrary showing; he being dead and the tax rolls destroyed.

[3] We conclude that evidence was sufficient to support both the finding of facts and the conclusions of law relative to the question of limitation.

What has been said in the discussion of assignment 3 is a complete answer to the complaint made by assignments 4 and 5, therefore they are overruled.

By the sixth assignment it is insisted that the trial court erred in holding that Samuel Damon held possession of any of the land in controversy sufficient under the statute of limitation, because such possession as Damon had was a mere encroachment, and because the land inclosed by such encroachment did not inclose those parts of tract No. 2 claimed by defendants Moore and Smith.

We overrule the assignment. We think the evidence is sufficient to support a conclusion that Damon had inclosed and cultivated some 30 or 40 acres or more of the land in controversy from 1850 to 1861, and that during such time he was claiming to own the whole of tract No. 2 and that such claim was adverse to all persons. It follows that we do not agree with appellants that the possession of Damon was a mere encroachment.

We think the complaints presented by the seventh to the fourteenth assignments, inclusive, have been answered by what has

been said in the discussion of assignment three; they are therefore overruled.

We have also considered the complaints presented by assignments 15 to 24, inclusive, and have reached the conclusion that none of them present cause for reversal of the judgment of the trial court.

What has been already said disposes of all the complaints presented by appellants, and our final conclusion is that the judgment of the trial court should be affirmed.

Having reached the conclusion that the judgment of the trial court should be affirmed upon the finding of said court on the question of presumption of a deed from Townes to Damon, and upon the question of limitation, we find it unnecessary to pass upon the question of innocent purchaser, or to find the facts bearing upon that issue, since they are shown by the undisputed evidence contained in the record.

Affirmed.

⟠For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes