. J. H. PAGE et al., Appellant,

v.

PAN AMERICAN PETROLEUM CORPORA-
TION et al., Appellee.

No. 71.

Court of Civil Appeals of Texas.

Corpus Christi.

Aug. 27, 1964.

Rehearing Denied Sept. 24, 1964.

Pritchett Harvey, Houston, for appellant.

Joyce Cox, of Fountain, Cox & Gaines, Cecil Cook and Neal Powers, Jr., of Butler, Binion, Rice & Cook, D. H. Austin of Liddell, Austin, Dawson & Huggins, Houston, Cleveland Davis, Angleton, and George Wear, Houston, for appellee.

GREEN, Chief Justice.

Summary judgment was granted the defendants in a trespass to try title suit. We affirm.

The parties will be referred to as in the trial court.

Defendants attached to their motion and supplemental motion for summary judg-

ment, or made a part thereof by appropriate reference, a number of affidavits and copies of a great many documents of public record, with a stipulation of counsel giving to such copies the same effect as originals duly proved in court would have. Many of the exhibits, entirely uncontroverted, consisted of summary matter showing the lands in issue in their historic context and facts concerning their use for over one hundred years.

Plaintiffs, in their answer to defendants' motion, also by proper reference placed in the record a number of affidavits, particularly applicable to the issue of limitation as to the particular acreage sued for, and several depositions. All statements herein of facts concerning Elizabeth Page Chase, Joseph William Page, Samuel Harrison Page, the history of the title to the property involved, and other matters concerning these lands are taken from the undisputed facts evidenced by the above mentioned documents, depositions, affidavits and exhibits.

The basis of the trial court's action is shown by the findings set forth in the decree, as follows:

"The Court considered the pleadings, said motion and supplement thereto and the answers to said motion and said supplement, and all motions, affidavits, exhibits and depositions on file in this cause, and concluding that from the undisputed facts a conveyance divesting Plaintiffs' predecessors in title of all right, title and claim in and to the lands comprising the upper one-eighth (⅛) of the Imla Keep League, Abstract 79, Brazoria County, Texas, including the lands title to which is in issue in this cause, is presumed and is proved as a matter of law, the Court sustaining Grounds 'III' and 'IV' of said motion, thereby rendering unnecessary a determination of whether fact issue or issues are made with respect to Grounds 'I' and 'II', it is accordingly

"ORDERED, ADJUDGED and DECREED that the defendants' motion be and the same is hereby sustained, and that plaintiffs take nothing herein with respect to the land described as follows:"

It is established by the record without dispute that Elizabeth Page Chase acquired title to the upper one-eighth of the Imla Keep League in Brazoria County, Texas, in 1829, and that she died intestate in the middle of 1833. She left as her sole heirs her two sons, Joseph William Page, born in 1812, and Samuel Harrison Page, born in 1821. Joseph was appointed administrator of her estate and guardian of his minor brother Samuel. On December 22, 1833, the administrator filed an inventory of Elizabeth Chase's estate, listing as part thereof "one-eighth of a league of land situated lying on San Bernard."

In a deed undated but recorded in the Deed Records of Brazoria County, Volume C, on the same page as is another deed dated December 24, 1839, and filed for record January 2, 1840, Joseph William Page conveyed all of his right, title, interest and claim in the upper eighth of the Keep League to John Sweeny, a resident of Brazoria County, "to have and to hold the same in fee simple forever. He, the said Joseph W. Page, relinquishing for himself and his heirs, *the whole of said land* in favor of the said John Sweeny." There is no record of any conveyance out of Samuel Harrison Page of the one-half interest in the upper one-eighth of the Keep League plaintiffs claim he inherited from his mother.

Plaintiffs in the trial court and on this appeal claim:

(1) That Samuel Harrison Page inherited one-half of the upper eighth of the Keep League from his mother;

(2) That plaintiffs are descendants of Samuel Harrison Page and are inheritors from him of the title they claim he inherited; and

(3) That defendants and those under and with whom they claim are, as owners of the other one-half of said property, co-tenants with plaintiffs and debarred by law from denying plaintiffs' claims of title.

Plaintiffs' claim is, indivisibly, claim to one-half of the upper one-eighth of the Imla Keep League; their suit here is an assertion of that claim as applied to the particular 39.87 acres of said land described in plaintiffs' final petition.

Defendants hold under a record chain of title commencing with the deed of 1839 from Joseph William Page to John Sweeny, a chain shown to be continuously active with every aspect of ownership for over one hundred years. It is their contention, and this is the proposition which was sustained by the trial court in granting the summary judgment, that as a matter of law long and notorious claim of title, dominion, payment by the defendants and their predecessors in title of taxes, the long acquiescence of plaintiffs and those under whom they claim in that dominion and claim of the defendants and their predecessors in title, the extreme notoriety to all concerned of these matters, and the opportunities of Samuel H. Page and his descendants to know the facts, establish as a matter of law that in some manner the title now attempted to be asserted by plaintiffs passed from their ancestors and is not now a title owned by them, but is a title owned by defendants.

After the death of their mother, Joseph and Samuel Page lived together, practically on the boundary line of Matagorda and Brazoria Counties, in close proximity to the land in question until Samuel married in 1850. They continued to live in that vicinity until Joseph died in 1854 in Matagorda County. He was a bachelor, and Samuel as his only heir inherited over 4000 acres of land from him. Samuel and his family moved from Matagorda County to Padre Island in 1855, afterwards moving to Nueces County, where he continued to reside until his death in 1893. The record shows that Samuel was keenly aware of his inheritances and during his long life engaged in numerous business transactions involving the property inherited from Joseph, as well as other property otherwise acquired. Though Samuel lived until he was 34 years of age in the immediate vicinity of the upper part of the Keep League, which for the last 15 of those years was well known as the Sweeny Plantation, and continued thereafter to live forty active years within less than two hundred miles, he never at any time made any claim that he had inherited any property in the Keep League from his mother and, in fact, never asserted any claim to the property here involved.

Instead, he and, after his death in 1893, his descendants remained silent as to any claim on the Keep League, while John Sweeny lived from 1839 or 1840 until his death in 1855 on his "Home Plantation" including the land now in issue; while the Sweeny heirs partitioned and traded as to the property; while most of the one-eighth league was included for over forty years in the McGrew Plantation, Sophie McGrew being the daughter of John Sweeny; while it was thereafter sold and resold; while large areas were actually occupied by the improvements of purchasers; while taxes were paid by those claiming under the Sweeny chain of title; while all of the land affected became a part of the Old Ocean Oil Field, and were unitized with other large areas, and until the property became very valuable by reason of the production of oil. As evidence that plaintiffs do consider this property to have great value, they include in their suit a prayer for three million dollars damages for defendants' withholding this 39.87 acres from them.

Since public records began and are now found, the successive holders of defendants' chain of title have paid all the taxes levied against this property, and plaintiffs and their predecessors in claimed title have paid none. All public records of Brazoria County, the Deed and Tax Records and the State Comptroller's Records, show ownership claim and tax payments in defendants' chain of title.

Not until plaintiff G. H. Nagel, not related to any of the other plaintiffs, commenced searching for the descendants of Samuel Harrison Page in 1957 and took assignments of part interest in their claims as part consideration for his agreement to pay all costs of this litigation did the records reflect any claim of anyone to any portion of the upper eighth of the Keep League adverse to those claiming under the Sweeny chain of title.

The court records of the guardianship proceedings of Samuel H. Page are incomplete and do not close. An affidavit of the County Clerk of Brazoria County, executed in September, 1958, shows over 200 numbered pages of Volume A of the original probate records as missing. An affidavit of the deputy clerk in that office, of the same date, evidences that in a storm of 1932, many of the old records, including old probate papers, were blown across the prairie, and she was unsure that all had been found.

■ Prior to the act of the Fourth Congress of the Republic of Texas of 1840 making sales of land void unless evidenced by an instrument in writing, lands could be sold in Texas orally, no deed of conveyance being necessary for the transfer of title from one to another. Herndon v. Casiano, 7 Tex. 322; Manchaca v. Field, 62 Tex. 135; Morris v. Moore, Tex.Civ.App., 216 S.W. 890, writ ref.

In the light of the circumstantial proof, we hold that the trial court did not err in presuming as a matter of law the proof of a conveyance divesting plaintiffs' predecessors in title of all right, title and interest in the lands comprising the upper one-eighth of the Imla Keep League in Brazoria County, Texas, including the 39.87 acre tract described in plaintiffs' pleadings. We feel that the defendants, by their summary judgment evidence, have shown the entire absence of any issue of fact but that there was such a disposal of title either by Elizabeth Page Chase prior to her death by parole or writing not recorded or lost, and not known to Joseph when he filed the inventory, or in the guardianship proceedings, record of which is incomplete, or by some subsequent unrecorded conveyance by Samuel Harrison Page, and that the plaintiffs have not offered any evidence to rebut defendants' proof, or establish a fact issue as to such presumption.

"Since it is not consistent with human experience for one really owning property of value to assert no claim thereto, but to acquiesce for a long period of time in an unfounded, hostile claim, the rule is sound which permits the inference that an apparent owner has parted with his title from evidence, first, of a long-asserted and open claim, adverse to that of the apparent owner; second, of a nonclaim by the apparent owner; and third, of acquiescence by the apparent owner in the adverse claim.

"The rule is essential to the ascertainment of the very truth of ancient transactions. Without it, numberless valid land titles could not be upheld. Its application becomes more and more important with the passing years, as it becomes more and more difficult to get living witnesses to that which long ago transpired." Magee v. Paul, 110 Tex. 470, 221 S.W. 254, 256.

Plaintiffs contend that in the absence of proof of a deed from their ancestor Samuel Page, defendants and their predecessors in title are and have been co-tenants with plaintiffs and their predecessors in title as to this property, and hence, under the rules of co-tenancy, the claims of defendants and their predecessors have not been adverse to their co-tenants. This same contention was made and disposed of adversely to plaintiffs in another suit between these same plaintiffs and many of the same defendants, involving the same chains of title to this same one-eighth Keep League. The only difference as to this contention of co-tenancy was that other acreage in the same upper one eighth of the Keep League was the subject of that suit. Page v. Pan American Petroleum Corporation, 327 S.W.2d 469, Tex.Civ.App.

1959, writ ref., n. r. e., and authorities there cited. Plaintiffs' so-called predecessors in title never made any claims to this property. The claims and holdings of defendants and their predecessors in title were adverse, open, and notorious to all for over one hundred years.

■ It is further contended that the presumption of a grant or deed which arises from the long-continued possession and use of real property is a presumption of fact, and not of law, and subject to rebuttal, and that the ultimate decision should be left to the jury in a jury trial, or the judge as an issue of fact in a non-jury trial. As a general rule, this is true, where fact issues are present. Texas Practice, Lange on Titles, Vol. 4, Sec. 405; Herndon v. Vick, 89 Tex. 469, 35 S.W. 141; Thompson v. Dutton, 96 Tex. 205, 71 S.W. 544; Bordages v. Stanolind Oil & Gas Co., Tex.Civ.App., 129 S.W.2d 786, writ dis., judg. corr.; Fowler v. Texas Exploration Co., Tex.Civ.App., 290 S.W. 818, writ ref.

■ However, as to whether an issue of fact or a question of law is presented depends upon the entire record of each case. And when, as in the present case, the record clearly presents a situation where, in the total absence of any facts to the contrary, reasonable minds could reach no other conclusion but that the long continued and undisturbed possession and claims of title, acquiesced in by plaintiffs' ancestor from whom they claim for over fifty years and by his descendants for another sixty years, could be explained only by the presumption of an unrecorded conveyance, the court will presume such a conveyance as a matter of law.

"The cases are not rare wherein it has been held that, after a great lapse of time, a transfer or a conveyance will be presumed in favor of one asserting, during all that time, open and notorious claim of ownership against the supposed grantor. Especially is this true, where, in the case of the transfer of a land

certificate, no written muniment is required. Newby v. Haltaman, 43 Tex. [314] 317; Ikard v. Thompson, 81 Tex. [285] 292, 16 S.W. 1019; Parker v. Spencer, 61 Tex. 155; Manchaca v. Field, 62 Tex. [135] 141; Capp v. Terry, 75 Tex. [391] 401, 13 S.W. 52." Baldwin v. Roberts, 13 Tex.Civ.App., 563, 36 S.W. 789, writ ref.

"The facts found by the court upon amply sufficient (most of them upon undisputed) evidence amply justified the further conclusion that the title in Hardin's heirs had been extinguished. Their long acquiescence in the possession and claim of appellees and those under whom they claim cannot be reasonably accounted for upon any other hypothesis. It is hardly going too far to say that the evidence, under the authorities, upon this question compelled such a finding, and that a contrary finding would have been against reason. (citing authorities.)" Surghenor v. Ducey, Tex.Civ.App., 139 S.W. 22, writ dis.

In Duke v. Houston Oil Co. of Texas, Tex.Civ.App., 128 S.W.2d 480, (writ dis., judg. corr.), the trial court instructed a jury verdict in favor of appellee who relied on the doctrine of a presumed deed of conveyance. The Court of Civil Appeals, in affirming the judgment, said:

"Weighing the facts on the principles above discussed, and by the authorities, we think the trial court was justified, as a matter of law, in presuming that the title transferred by George Ryan to James Henderson was transferred back to Ryan by Henderson. Every inference in the record supports that presumption, and, as we view the record, there is not a circumstance against it. *Appellants offered no evidence to rebut this presumption.* As a fact issue, no one could dispute the proposition that the evidence was sufficient to send it to the jury. But on the issue, as in proof of all other issues, where there is no

ground upon which reasonable minds can differ, the court, as a matter of law, can draw the conclusion, and so instruct the jury."

In Clements v. Texas Co., Tex.Civ.App., 273 S.W. 993, writ ref., it was necessary, if the judgment of the trial court were to be affirmed, that a judgment, the record of which had been lost or destroyed, be established or presumed from circumstances. We quote from the opinion as follows:

"We think the facts can lead to no other conclusion than that such a judgment was pronounced, and that its terms were as described in the petition for injunction filed by George Tenille.

"We approach this question from the standpoint of the rule laid down by Judge Wheeler in Baker v. Coe, 20 Tex. 429:

" 'Presumptions must be indulged in favor of those proceedings, especially when they are ancient, and titles have been acquired and transmitted under them, or it would indeed be true that time, instead of healing, as it should, the defects of these titles, would gradually undermine, and eventually destroy them.'

"It is difficult to assume a state of facts which would call more strongly for the indulgence of a presumption of the very existence of the judgment, if this were necessary.

"But plaintiff contends that such a presumption is necessary, and that such a presumption is one of fact and when indulged is for the jury. Academically, this may be true, but such a presumption, having to do with a transaction 80 years in the past, becomes, for all practical purposes, one of law, for generally the great age which raises the presumption also obliterates the evidence which might have overthrown it. It becomes immaterial, in short, whether it be considered a rebuttal or conclu-

sive presumption. So it is in this case. Not only are there facts which give rise to the presumption of the existence of such a judgment, there is also direct evidence of its existence, and, there being an entire absence of evidence to the contrary, whether upon the presumption or upon the uncontroverted direct evidence, it becomes proper to say as a matter of law that such a judgment existed."

■ On the record of our case defendants presented a situation with regard to the title to this land which, in the absence of rebuttal testimony, would require as a matter of law the conclusion that plaintiffs, and those under whom they must claim, did not own this property, and that full legal title had been acquired by defendants and those in their chain of title. Plaintiffs offered nothing to refute or rebut the presumption of legal transfer of the title which they would claim. If the necessity for a legal presumption existed back in Justice Wheeler's time, it is many fold more essential today. We agree with defendants' counsel that a title as well recognized, as notorious, as adversely held, and which has been knowingly acquiesced in for such a long period of time, as that held by John Sweeny and his successors and assigns, should not be placed in jeopardy by a claim based on the record before us.

We sustain Appellees' First Counterpoint, that the Trial Court correctly held that upon the record Appellants have no right to the upper one-eighth of the Keep League, of which the area in issue is a part.

Defendants, by their second counterpoint, submit that the summary judgment shoud be affirmed because, as a matter of law, plaintiffs' claims are barred by Article 5510, Vernon's Ann.Rev.Civ.Stats. of Texas. By their third counterpoint they submit that Samuel Harrison Page and his descendants are estopped to claim any portion of the upper one-eighth of the Keep League. These are the two propositions raised in

Grounds I and II of defendants' motion for summary judgment which were not determined or passed on by the trial court. See extract from his decree, supra.

In support of their limitation plea, defendants cite *Page v. Pan American Petroleum Corp.*, 327 S.W.2d 469, writ ref. n. r. e. A distinction between the two cases as to the plea of limitations appears to be that in the prior case, plaintiffs did not by answer to the motion deny or by affidavit refute defendants' motion and affidavits, and hence raised no issue of fact, as held by the court. In the present case, heard in the district court after the decision in the prior case, plaintiffs did, by sworn answer, depositions, and affidavits, seek to raise fact issues on limitation title as it concerns the particular acreage sued for. The learned trial court, who presided and rendered judgment in both causes, deemed it unnecessary to determine whether fact issues were made with reference to the pleas of limitation and estoppel. We shall be guided by his decree, and affirm his judgment without passing upon Counterpoints Nos. 2 and 3.

Judgment affirmed.