Oliver A. HOWLAND, Petitioner,

v.

J. T. HOUGH et ux., Respondents.

No. B–6964.

Supreme Court of Texas.

July 19, 1978.

Rehearing Denied Oct. 11, 1978.

Vernon M. Pfluger, Ferguson & Ferguson, Russell G. Ferguson, Austin, for petitioner.

Sneed, Vine, Wilkerson, Selman & Perry, Forest N. Troutman, Austin, for respondents.

DENTON, Justice.

This is an action in trespass to try title brought by Oliver A. Howland against J. T. Hough and wife, Lucille Hough, to recover an 8.36 acre tract of land in Travis County, Texas. After a jury trial, the trial court rendered judgment vesting title in the defendant Houghs. The court of civil appeals reversed and remanded for new trial because of the erroneous exclusion of evidence. 553 S.W.2d 162. We reverse the judgments of the courts below and render

judgment vesting title and possession of the land in Oliver A. Howland.

Howland attempted to prove title to the disputed tract of land by a regular chain of title from the sovereign. Alternatively, he pleaded and offered evidence relating to adverse possession under the 3, 5, 10, and 25 year statutes of limitation. Finally, he contended that he was in possession of the property prior to the Houghs' entry upon the land. The Houghs, on the other hand, pleaded not guilty, and claimed adverse possession under the 3, 5, 10, and 25 year statutes of limitations.

In answer to special issues, the jury found: (1) Neither Howland nor the Houghs had held adverse possession of the land for a 10 year period prior to the filing of this suit. (2) Howland was in possession of the tract prior to February 25, 1974, the date of the Houghs' alleged unlawful entry. (3) The Houghs were possessors of the tract in good faith "for at least one year next before the commencement of this lawsuit on October 15, 1974." (4) The Houghs made valuable improvements to the land without the intent to defraud, and these improvements were removable and enhanced the value of the land by $17,870. Based upon the jury verdict, the trial court rendered judgment that plaintiff Howland take nothing and that title to the land be vested in the defendant Houghs.

In the court of civil appeals, Howland sought a reversal and rendition in his favor, or alternatively, a remand for a new trial. The court held that Howland had not established his title by a regular chain of conveyances from the sovereign, and that he had not established that he was in actual prior possession of the tract. Therefore, the court overruled his rendition points. Based upon the alleged erroneous exclusion from evidence of a prior deed given by the Houghs which contained an admission against interest of the Houghs', the court of civil appeals reversed and remanded for new trial. Howland now seeks outright rendition of judgment in his favor based

upon either the strength of his own title or the jury finding of his prior possession.

The 8.36 acre tract in dispute was originally a part of the James O. Irvine Survey, sometimes called the "Irwin" or "Erwin" survey. Howland introduced nine deeds into evidence to establish his chain of title from the sovereign. The deeds adduced in evidence had two principal defects. First, after the patent from the Republic of Texas in 1845 to James O. Irvine, there is a gap in title until the 1878 deed from Henry Hill to August Meissner. Second, the tract in dispute is not within the literal calls of the deed from Hill to Meissner, nor any of the subsequent deeds in Howland's chain of title.

Howland contends that the missing link in his chain of title can be eliminated by application of the presumption of a grant doctrine. He argues that long continued and undisturbed possession of the land should give rise to the presumption of a conveyance as a matter of law, especially since the gap was 96 years prior to the filing of this suit. The Houghs assert that the presumption of a lost grant is one of *fact*, and is for the jury to decide. Since no special issue was requested or submitted on presumed grant, the Houghs argue that the issue has been waived and Howland has not proven a complete chain of title from the sovereign.

■ We agree that it is the law in Texas that the presumption of a grant which arises from long continued possession of property under a claim of title coupled with other corroborating circumstances is generally a presumption of fact. Thus, the trier of fact usually must determine whether the inference of a grant is warranted by the evidence. *Swilley v. McCain,* 374 S.W.2d 871 (Tex.1964); *Herndon v. Vick,* 89 Tex. 469, 35 S.W. 141 (1896); *Page v. Pan American Petroleum Corp.,* 381 S.W.2d 949 (Tex. Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.), *cert. denied,* 382 U.S. 820, 86 S.Ct. 45, 15 L.Ed.2d 66 (1965); 4 F. LANGE, LAND TITLES AND TITLE EXAMINATION

§ 405 (Texas Practice 1961). Whether there is an issue of fact or law, however, depends upon the record in each case.

The deeds in Howland's chain of title show continuous record conveyances of the land described therein from the granting of the Irvine patent until the present time, with the sole exception of the 1845–1878 period. The Houghs' claim to title arises from a deed given to them by Jesus Garcia in 1947, along with a "Correction And Supplemental Deed" in 1954. No prior chain of title was shown by the Houghs, other than a reference in their deed from Garcia to a sheriff's deed in 1904. That deed was not produced in evidence. The Houghs have not tried to connect their title to either the Irvine patent or any purported record title holder during the 33 year gap in title.

■ Because the gap in Howland's title occurred 96 to 129 years before this suit was brought, no direct evidence was available as to possession of the land. Proof of possession is not, however, an absolute prerequisite to the presumption of a lost conveyance. In *Magee v. Paul*, 110 Tex. 470, 479, 221 S.W. 254, 257 (1920), this Court said:

Actual possession of the land by Stephen Albert or by his assigns was not essential to the establishment by circumstantial evidence of the alleged missing link or links in the title . . . .

See *Baldwin v. Goldfrank*, 88 Tex. 249, 31 S.W. 1064 (1895); *Garner v. Lasker*, 71 Tex. 431, 9 S.W. 332 (1888); *Brewer v. Cochran*, 45 Tex.Civ.App. 179, 99 S.W. 1033 (Galveston 1907, writ ref'd).

■ Since the transactions with respect to the land in controversy took place so long ago, we regard Howland's unbroken chain of title since 1878 as evidence of the assertion of ownership of the land. With reference to the evidence necessary to presume a grant, it has been stated:

Where then, under such rule it is sought to establish such deed from circumstanc-

es, and among such circumstances are long and continuous claim of title and ownership, which is not shown to have been disputed by any adverse claim, with such indicia of ownership by payment of taxes, successive conveyances, etc., as are here present, we can see no objection to the application of the rule. referred to, to the admission of evidence and declarations made by persons claiming such title and ownership, which serve to explain such claim in cases where the parties are all dead, and length of time, by destroying other, perhaps more satisfactory, proof, has created the necessity of a resort to the evidence of such declarations.

\*　　\*　　\*　　\*　　\*　　\*

Every such sale and conveyance involves necessarily, by presumption, a claim of title in the grantor, which is nothing more than a declaration that he has title, and it is for that purpose that the evidence is admitted.

\*　　\*　　\*　　\*　　\*　　\*

The claim of title and assertion of ownership, as evidenced by various acts of sale and conveyances, all made matter of public record, and by payment of taxes by his vendees, are admissible as circumstances, without actual possession, which is not essential, especially in case of wild land such as this, of which there has never been actual possession by anybody.

*Brewer v. Cochran, supra*, at 99 S.W. at 1035–36. Since there is no suggestion that a claim has ever been asserted by any purported heir or grantee of James O. Irvine, and since there is a series of sales and conveyances of the land in Howland's chain of title which evidences an assertion of ownership, we regard possession of the land as sufficiently established by the circumstances as a predicate for presuming a grant. Although the presumption of a lost grant or conveyance is usually one of fact, it has been sufficiently established in this case to presume it as a matter of law because the deeds are so ancient and the

evidence is undisputed. *Page v. Pan American Petroleum Corp.*, 412 S.W.2d 797 (Tex. Civ.App.—Houston 1967, writ ref'd n. r. e.); *Page v. Pan American Petroleum Corp.*, 381 S.W.2d 949 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.), *cert. denied*, 382 U.S. 820, 86 S.Ct. 45, 15 L.Ed.2d 66 (1965). With reference to the doctrine of presumption of a grant, this Court has said:

> The rule is essential to the ascertainment of the very truth of ancient transactions. Without it, numberless valid land titles could not be upheld. Its application becomes more and more important with the passing years, as it becomes more and more difficult to get living witnesses to that which long ago transpired.

*Magee v. Paul*, 110 Tex. 470, 478, 221 S.W. 254, 257 (1920). We therefore hold that Howland has filled the ancient 1845–1878 gap in his title by establishing the facts necessary to presume a grant from James O. Irvine to Henry Hill as a matter of law.

Howland's next problem in proving a chain of title from the sovereign is that the disputed tract does not fall within the literal calls of his deed. The patent from the Republic to James O. Irvine contained the following description:

> Beginning at the North West corner of quarter No. 5 Surveyed for Wm. Rhodes. [1] Thence South 71° West two thousand one hundred and fifty varas the South East corner of Survey No. 3 of Harvey's work. [2] Thence South 30° West eight hundred varas the North East corner of Survey No. 2 of Harvey's work. [3] Thence South 60° East two thousand five hundred varas the South East corner of said No. 2. [4] Thence North 30° East one hundred and seventy varas the North East corner of Survey No. 1 of Harvey's work. [5] Thence South 60° East nine hundred and fifty varas a stake on the East boundary line of Survey No. 1. [6] Thence North 19° West nine hundred and forty varas the North West corner of a survey made for Jas. Howlet [sic]. [7] Thence North 71° East one hundred and eighty six varas a stake on the West boundary line of quarter No. 5. [8] Thence North 19° West two Thousand one hundred and ninety seven varas to the place of beginning.

The next deed in the chain of title is from Henry Hill to August Meissner. This deed purported to convey the southernmost 100 acres of the original survey, which is the same land covered in all of the deeds in Howland's chain of title, with some reservations not here relevant. All of the subsequent deeds either incorporate the Hill deed description by reference, or use a closely similar description. The Hill to Meissner deed contains this description:

> One hundred acres, more or less, off of the Southern portion of the J. O. Erwin survey situated in Travis County and State of Texas, aforesaid, [1] Beginning at a stone mound 293 vs. N. 19 W. from seventh Corner in the Calls of Original Field notes of said Irwin tract. [2] *Thence S. 71 W. to a stake in the S.W. Boundary of said Irwin tract.* [3] Thence S. 60 E. 391 varas to a corner of said survey. [4] *Thence S. 30 W. 170 vs.* [5] Thence S. 60 E. 950 vs to a cor. [6] Thence N. 19 W. 940 varas to a corner. [7] *Thence N. 71 E. 170 vs to a corner.* [8] Thence N. 19 W. 293 vs to Beginning.

The following drawing is for illustration purposes and is not precisely to scale. The calls in the deeds in Howland's chain of title are numbered 1 through 8; the calls in parentheses are the corrected calls as argued by Howland. The eight calls in the Irvine survey are designated "I–1" through "I–3" and (4) through (8).

The Hill deed stated that it was conveying the southern portion of the Irvine survey. If this was the intent, however, there are at least three errors in the calls in the Hill deed, which are repeated in the subsequent deeds in Howland's chain of title. First, if the second call in the Hill deed is followed to the southwest boundary of the Irvine survey, subsequent calls go outside of the Irvine survey, as indicated by the dotted lines in the diagram. In order to mesh with the corners in the Irvine patent, the second call must "dip" south to a point 391 varas from the end of the third call in the Irvine survey. Second, the fourth call in the Hill deed appears to be reversed. The fourth call in the Irvine patent said "North 30° East" 170 varas, while the Hill deed and the other deeds in Howland's chain of title say "S. 30° W. 170 vs." Even if the second call is corrected to reflect the dip, the fourth call in the Howland deeds, if not corrected, would also go outside the Irvine survey. Third, the distance in the seventh call of the Howland chain of title is listed as 170 varas, while the Irvine patent provided for a distance of 186 varas. A variance in this distance would skew the northeastern boundary of the tract in relation to the calls of the Irvine survey.

 Howland argues that these errors are obvious and should be corrected by this Court in order to harmonize the deeds with the original survey. In *William Carlisle &*

Co. v. King, 103 Tex. 620, 624–26, 133 S.W. 241, 242–43 (1910), this Court said:

> The rule of construction of deeds is, "that where there is an evident mistake in the calls, the court must, if practicable, find out from the deed itself and correct errors so as to give effect to the deed." *Poitevent v. Scarborough*, 103 Tex. 111, 124 S.W. 87; *Mansel v. Castles*, 93 Tex. 414, 55 S.W. 559; *Coffey v. Hendricks*, 66 Tex. 676, 2 S.W. 47.

\* \* \* \* \* \*

> This purpose must be observed in the construction of the deed, and it cannot be effectuated in any other manner than by correcting the palpable errors which appear in the calls as expressed in that instrument. We believe that there is no difficulty in reconciling all of these calls, thereby giving a true and correct expression of the intent and purpose of the makers of this instrument.

It is an established rule that the footsteps of the surveyor shall, if possible, be followed, and natural or artificial monuments are to be accepted as controlling over calls for course and distance. *Wheeler v. Stanolind Oil & Gas Co.*, 151 Tex. 418, 252 S.W.2d 149 (1952); *Stafford v. King*, 30 Tex. 257 (1867). It is also permissible to run the calls in reverse order to ascertain the true lines and form a closure, since no greater dignity is accorded to the first call than the last. *Miles v. Sherwood*, 84 Tex. 485, 19 S.W. 853 (1892); *Ayers v. Lancaster*, 64 Tex. 305 (1885); *Sweats v. Southern Pine Lumber Co.*, 361 S.W.2d 214 (Tex.Civ.App. —Houston 1962, writ ref'd n. r. e.).

■ The first deed discrepancy is in the second call of the deeds in Howland's chain of title, beginning with the Hill deed. The second call in the Hill deed does not specify a distance, but rather provides that the northern boundary line of the 100 acre tract runs from the point of beginning south 71° west "to a stake in the S.W. Boundary of said [Irvine] tract." It is not clear from the record where that stake is or whether it still exists as a marker; however, it is obvious that the line does not run straight from the beginning to the southwest boundary of

the Irvine survey. If it did run straight, calls 4 through 6 would include land which does not lie within the Irvine survey. Rather, the line described in the second call must dip to the south as indicated in the diagram, because the end of the third call is described as a corner of the Irvine survey. Therefore, since the third call in the Hill deed starts at a stake in the southwestern boundary of the Irvine survey, and then runs at precisely the same south 60° east angle to a corner in the Irvine survey, it seems obvious that the corner where the third and fourth calls meet is the same in the Hill deed as in the Irvine patent. The second call thus ends on the southwestern line of the Irvine survey at a point 391 varas from the corner of the third and fourth calls. We therefore correct this obvious error in the calls in accordance with *William Carlisle & Co. v. King, supra*.

■ The second discrepancy in the calls of the Hill deed is in the fourth call. The fourth call in the Irvine survey says *north 30° east* 170 varas, while the fourth call in the Hill deed says *south 30° west* 170 varas. We regard this as another obvious error in the description in that the call was inadvertently reversed. If the fourth call in the Hill deed is run as it says, calls 4 through 6 again would describe land not lying within the Irvine survey. By merely reversing the fourth call, the fifth and sixth calls and the corners of the Hill deed coincide with fifth and sixth calls and the corners of Irvine patent. This would effectuate the intent of the grantor to convey the southern 100 acres of the Irvine survey.

■ The third discrepancy in the description of Howland's land is in the seventh call in the Hill deed. The seventh call of the Irvine survey ran "North 71° East one hundred and eighty six veras a stake on the West boundary line of quarter No. 5." The seventh call in the Hill deed reads "N. 71 E. 170 vs. to a corner." This is a discrepancy which the parties fail to mention, but we must again conclude that either the Irvine survey or the Hill deed is incorrect in the distance described in the seventh call. Whatever distance is correct, we regard the

Irvine patent and Hill deed as being in harmony since the angles match and the seventh call in the Hill deed expressly states that it ends at a corner of the Irvine survey. Furthermore, if this corner coincides, then the eighth call in the Irvine patent and the Hill deed will match because both call for an angle of north 19° west to the two points of beginning. The most recent surveys in evidence show the line representing the seventh call to be approximately 447 feet in length, and it is undisputed that the eastern 25 feet of the 8.36 acre tract in dispute was sold off for right of way purposes; 447 feet plus the 25 feet sold equals 472 feet, or approximately 170 varas. In harmonizing the Irvine patent and the Hill deed, we conclude that the seventh call in the Irvine patent should have been 170 varas in length rather than 186 varas. We also note that if the calls in the Hill deed are run in reverse order, the disputed 8.36 acres lies within the description of the deeds in the Howland's chain of title. It is permissible to reverse calls in order to form a closure. *Miles v. Sherwood, supra; Sweats v. Southern Pine Lumber Co., supra.*

After correcting obvious errors in calls and reconciling the conflicting distances, we conclude that Howland has proven his chain of title from the sovereign to the 8.36 acre tract in question. Since Howland has established his chain of title and the Houghs failed to obtain a jury finding in their favor on the issue of adverse possession, Howland is entitled to recover the disputed tract of land on the strength of his title. Our holding makes it unnecessary to consider Howland's remaining points of error concerning prior possession.

The judgments of the courts below are reversed and judgment is here rendered vesting title and possession of the land in question in Oliver A. Howland.

GREENHILL, C. J., and McGEE and DANIEL, JJ., note their dissent.