COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| BALMORHEA RANCHES, INC., | § | No. 08-20-00127-CV |
| Appellant, | § | Appeal from the |
| v. | § | 143rd District Court |
| | § | of Reeves County, Texas |
| ANN ROSS HEYMANN, | § | (TC# 18-01-22295-CVR) |
| Appellee. | § | |
| | § | |

**O P I N I O N**

In this dispute over ownership of certain tracts of land, Appellant Balmorhea Ranches, Inc. (Balmorhea Ranches), appeals the trial court's order denying its motion for summary judgment and granting the competing motion of Appellee Ann Heymann. On appeal, Balmorhea Ranches brings seven issues—mixed with procedural and merit-based complaints—contending the trial court erred in considering evidence outside the summary judgment proceeding, in issuing findings of fact and conclusions of law, and in rendering judgment on the merits. We affirm.

## I. BACKGROUND

*The Rosenbaums*

Ann Heymann is the granddaughter of E.F. Rosenbaum. In the years 1917 and 1919,

respectively, E.F. Rosenbaum's parents, Joseph and Emma Rosenbaum, executed two conveyances of land to him. Relevant to this case, the 1917 deed conveyed—among many other properties—just over 300 acres of Section 52, Block 13, in Reeves County, Texas. The 1919 deed subsequently conveyed just over 200 additional acres of Section 52, Block 13.

The parties agree that, in 1926, E.F. Rosenbaum conveyed some, but not all, of the land he acquired in 1917 and 1919 to Balmorhea Livestock Company (Balmorhea Livestock), a company he apparently formed. Relevant to this case, the approximately 200 acres of Section 52 that were included in the 1919 deed to E.F. Rosenbaum were not explicitly included in the 1926 deed to Balmorhea Livestock. The ownership of the three tracts that make up those approximately 200 acres are in dispute in this case. Because the parties agree on the size, location, and description of the three tracts, we see no need to describe them more specifically here; we simply refer to them together as the "Property."

E.F. Rosenbaum survived his wife by a decade. Both died without a will. One of their children had predeceased them with no children of his own, so upon E.F. Rosenbaum's death in 1963, his estate passed in equal shares to their other two children: a daughter named Maud Rosenbaum Levi Blumenthal (Maud) and a son named E.F. Rosenbaum Jr. (Frank Jr.). Ann Heymann was one of Frank Jr.'s three children. When Frank Jr. died in 1963, he left his entire estate—including his one-half interest in his father's estate—to his then-current wife, Lillian Ross. For that reason, Ann's claim of interest in the Property does not derive from the share that was, at one time, owned by her father. Instead, Ann's claim of interest derives from the share she inherited from Maud, her aunt.

When Maud died in 1981, she left her estate—including her one-half interest in her father's estate—to her daughter Nina Sweeney. Nina Sweeney, of course, was Ann Heymann's first cousin.

Nina Sweeney died in 2007, and all of the beneficiaries named in her will had predeceased her. Subsequently, all of her real property located in the State of Texas—including her one-half interest in Frank Jr.'s estate—passed according to Texas' laws of intestate succession. Those laws of succession provided that Sweeney's estate was to be divided into two equal shares, with one such share passing to her "maternal kindred" and one passing to her "paternal kindred." TEX. EST. CODE ANN. § 201.001(f)-(h). Sweeney's maternal kindred were identified as Ann Heymann and her two brothers, Stephen and Joseph Ross. As a result of the foregoing, half of Sweeney's estate was divided between the three of them, each receiving a one-sixth interest in Sweeney's estate, and, by extension, a one-twelfth interest in E.F. Rosenbaum's estate. As a result, in this dispute, Ann Heymann claims that she owns an undivided one-twelfth interest in the Property's surface and mineral estates.

*Balmorhea Livestock and Balmorhea Ranches*

In 1939, Balmorhea Livestock filed for bankruptcy. Related to that proceeding, Balmorhea Ranches was created for the specific purpose of acquiring Balmorhea Livestock's assets. In 1942, the bankruptcy trustee, James C. Wilson, conveyed all of Balmorhea Livestock's real property assets to Balmorhea Ranches by trustee deed (the Trustee's Deed). None of the Property at issue here was included in the Trustee's Deed.

After acquiring Balmorhea Livestock's real property, Balmorhea Ranches entered into numerous contracts to lease and sell some of those surface and mineral rights. In the first two of these leases, executed in 1950 and 1955—approximately eight and thirteen years after the Trustee's Deed, respectively—Balmorhea Ranches explicitly leased mineral rights to only the portion of Section 52 that was included in the Trustee's Deed. However, in a 1957 oil-and-gas lease, Balmorhea Ranches purported to lease additional parts of Section 52, including the Property.

3

By 1965, and for all later leases included in our record—one each from the years 2002, 2004, 2008, 2011, and 2015—Balmorhea Ranches purported to lease the mineral rights to virtually all of Section 52. The 2015 oil-and-gas lease was in favor of Apache Corporation. According to Dudley Montgomery, the president of Balmorhea Ranches, it was Apache Corporation who first raised a potential title issue with regard to the Property.

Balmorhea Ranches asserts it sold the Property's surface estate in 2005 to Spanish Trail Land and Cattle Company, LP, but it claims it retained a 100% interest in the mineral estate.[1] The warranty deed to Spanish Trail Land and Cattle explicitly conveyed the part of Section 52 included in the 1942 Trustee's Deed.

*Procedural History*

In January of 2018, Balmorhea Ranches sued Ann Ross Heymann for declaratory judgment; for trespass to try title; and for attorneys' fees. Balmorhea Ranches claimed it was the rightful owner of the Property under theories of adverse possession and the doctrine of presumed lost grant. After litigating for a time, Balmorhea Ranches filed a first amended petition in which it continued to assert it owned all right, title and interest in and to the Property as a result of the presumed lost grant (or lost deed), but it no longer asserted a claim of adverse possession.

On March 19, 2019, Balmorhea Ranches moved for summary judgment claiming as a matter of law that the presumed-lost-grant doctrine applied to the case and it was entitled to judgment removing a cloud of title on the Property asserted by Ann Heymann.[2] Heymann soon filed a competing motion for summary judgment claiming that Balmorhea Ranches' declaratory

---

[1] Spanish Trail Land and Cattle Company, LP is not a party in this case.

[2] Only one exhibit was attached to Balmorhea Ranches' motion for summary judgment: the affidavit of Dudley Montgomery, the principal of Balmorhea Ranches.

action and its trespass to title claim both fail as a matter of law.[3] Specifically, Heymann asserted the evidentiary doctrine of presumed lost grant did not apply based on an undisputed chain of title governing the Rosenbaum tracts. After full briefing from the parties, the trial court held a motions hearing.[4] As the hearing ended, the trial court indicated it would take the matter under advisement. In the meantime, the case proceeded toward trial, and on January 23, 2020, the parties jointly filed stipulated facts, many of which form the basis of the background of this opinion.[5]

On April 3, 2020, the trial court sent a letter to counsel announcing it had granted Heymann's motion for summary judgment and denied Balmorhea Ranches' competing motion. The formal order and final judgment granting Heymann's motion and denying Balmorhea Ranches' motion was rendered on May 18, 2020. On that same day, the trial court also filed a document titled, "Findings of Fact and Conclusions of Law," (Findings), a proposed version of which had been filed by Heymann on the same day as the parties' stipulations. The version of the Findings signed by the trial court included additional markings such as strikeouts and new text.

This appeal followed.

---

[3] Heymann attached ten exhibits to her motion for summary judgment: (1) Ann Heymann's Affidavit of Heirship regarding E.F. Rosenbaum's estate; (2) Balmorhea Ranches' responses to certain discovery requests; (3) the 1917 deed to E.F. Rosenbaum from his parents; (4) the 1919 deed to E.F. Rosenbaum from his parents; (5) the 1926 deed from E.F. Rosenbaum to Balmorhea Livestock; (6) the 1942 bankruptcy trustee's deed in favor of Balmorhea Ranches; (7) the Final Decree Deed Record regarding the Trustee's Deed; (8) a 1950 oil-and-gas lease from Balmorhea Ranches in favor of Harry Mortimer; (9) a 1955 oil-and-gas lease from Balmorhea Ranches in favor of Standard Oil; and (10) a 1957 oil-and-gas lease from Balmorhea Ranches in favor of Standard Oil.

[4] Balmorhea Ranches attached several additional exhibits to its Response to Heymann's motion for summary judgment: (1) the affidavit of Michael T. Morgan, the attorney for Balmorhea Ranches; (2) a 1965 oil-and-gas lease from Balmorhea Ranches in favor of J. Roy McCoy; (3) a 2002 seismic option agreement from Balmorhea Ranches in favor of M. Craig Clark; (4) a 2004 oil-and-gas-lease from Balmorhea Ranches in favor of Tom Brown, Inc. (5) a 2008 top lease from Balmorhea Ranches in favor of Chesapeake Exploration, L.L.C.; and (6) the property-description exhibit, purportedly from a 2011 oil-and-gas lease from Balmorhea Ranches in favor of Lone Star Oil & Gas, Inc.

[5] The parties attached the following additional exhibits to the Stipulations: (1) Plaintiff's Abstract of Title; (2) a 2015 oil-and-gas lease from Balmorhea Ranches in favor of Apache Corporation; (3) a 2005 warranty deed from Balmorhea Ranches in favor of Spanish Trail Land and Cattle Company, LP; and (4) certain Reeves County tax records regarding Section 52, Block 13.

## II. SUMMARY JUDGMENT EVIDENCE

In its first two issues, Balmorhea Ranches raises two procedural complaints about the summary judgment evidence. First, it argues the trial court erred in going outside the summary judgment record in ruling on the competing motions for summary judgment. Second, it argues the trial court erred in rendering its Findings following a summary judgment proceeding.

We consider each issue in turn.

### A. The scope of the evidence on file

In its first issue, Balmorhea Ranches argues the trial court erred in considering the parties' trial stipulations that were filed after full briefing and the holding of a hearing on the motions for summary judgment. Here, the trial court's formal order on the motions for summary judgment provides that the written stipulations filed by the parties' on January 23, 2020, were considered along with the pleadings, responses, and arguments of counsel. Balmorhea Ranches argues that no party asked the court to consider the stipulations as part of its summary judgment ruling, nor otherwise incorporated them by reference into the summary judgment record. It urges the trial court erred in failing to limit its consideration of the record evidence. We disagree.

*Standard of Review*

Although we generally review summary judgments de novo, a trial court's consideration of evidence as part of the summary judgment record is reversed only if it commits an abuse of discretion. *See Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 85 (Tex. 2018) (holding that a trial court's ruling concerning the admission or exclusion of summary judgment evidence is reviewed under an abuse of discretion standard); *Boston Sea Party of Houston, Inc. v. Argovitz*, 583 S.W.2d 465, 466 (Tex. App.—Houston [1st Dist.] 1979, no writ) (holding that the consideration of additional pleadings filed with permission before an order on summary judgment was signed was "wholly

6

within the discretion of the trial court"); *see also* TEX. R. CIV. P. 166a(c). A trial court abuses its discretion if its decision is "arbitrary, unreasonable, and without reference to guiding principles." *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). Stated differently, a trial court abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

*Applicable Law*

In relevant part, Texas Rule of Civil Procedure 166a(c) states:

> The [summary] judgment sought shall be rendered forthwith if . . . the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that . . . there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion . . . .

TEX. R. CIV. P. 166a(c).

As a general rule, the trial court only considers the record as it properly appears when the motion for summary judgment is heard. *Nicholson v. Mem'l Hosp. Sys.*, 722 S.W.2d 746, 749 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). However, as Rule 166a(c) makes clear, a trial court has discretion to permit later filings and consider those filings when granting or denying a request for summary judgment. TEX. R. CIV. P. 166a(c).

*Analysis*

Here, at the time of the hearing on the parties' competing motions for summary judgment, the trial court had both parties' motions, all responses, and the evidence attached to those filings. But the trial court did not immediately rule on either motion, instead taking the matter under advisement. In the meantime, the parties filed their joint stipulations on January 23, 2020. Balmorhea Ranches has not provided any evidence nor argument showing the stipulations were

7

not permitted by the trial court; instead, it is clear the trial court allowed such filing of stipulations and no objection was raised or soon followed.

Further, stipulations are one of the items explicitly mentioned in Rule 166a(c) as being particularly helpful in summary judgment proceedings. *Id.* This is not surprising, as stipulations, by definition, narrow the issues by letting the trial court know what is not in dispute, or, stated differently, where there is "no genuine issue." *See id.* As a result of the foregoing, we determine the trial court did not abuse its discretion in considering the agreed stipulations the parties filed when making its summary judgment rulings.

Appellant's first issue is overruled.

## B. The trial court's issuance of Findings of Fact and Conclusions of Law

In its second issue, Balmorhea Ranches argues the trial court erred in entering its Findings in connection with its orders granting Heymann's motion for summary judgment and denying Balmorhea Ranches' motion. Heymann concedes that findings of fact and conclusions of law have no place in a summary judgment proceeding. To the extent the trial court erred, however, she argues the error was harmless. We agree with Heymann.

*Applicable Law*

Findings of fact and conclusions of law "have no place in a summary judgment proceeding" because for summary judgment to be rendered there cannot be any "genuine issue as to any material fact . . . ." *Linwood v. NCNB Texas*, 885 S.W.2d 102, 103 (Tex. 1994); TEX. R. CIV. P. 166a(c). In other words, summary judgment is only proper when there are no facts to find and the legal conclusions have already been stated in the motion and response. *See IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997). Furthermore, appellate courts may not consider any such findings or conclusions when reviewing the summary judgment. *IKB Indus.*,

8

938 S.W.2d at 443.

*Analysis*

Here, both parties contended—in their opposing motions for summary judgment on the issue of presumed grant—that there were no disputed issues as to material facts. They also had later filed agreed stipulations, which somewhat formed the basis for the trial court's findings. After receiving argument from counsel, the trial court took the motions under advisement until less than two weeks before the case was set for bench trial. By then, Heymann had filed proposed findings based upon the parties' stipulations and presumed evidence.

After the trial court ruled on the two motions for summary judgment, it took Heymann's proposed findings of fact and conclusions of law and edited them to reflect undisputed facts contained in the pleadings, including the parties' stipulations. Despite the document's title, we determine the trial court did not resolve any disputed facts as none were in dispute. As a result, we conclude no error has been established on this record.

Appellant's second issue is overruled.

### III.  THE MERITS OF SUMMARY JUDGMENT

In the remaining five issues, Balmorhea Ranches challenges the trial court's summary judgment rulings on the merits. We group these issues based on the doctrine of presumed grant and the anti-suit injunction, which are the two legal theories addressed within these challenges.

#### A.  The doctrine of presumed grant

In its fourth, fifth, and sixth issues, Balmorhea Ranches argues the trial court erred in failing to recognize and failing to apply the doctrine of lost grant or presumed lost deed and, as a result, erred in denying its motion for summary judgment. In its seventh issue which, as we explain below, is closely related to issues four, five, and six, Balmorhea Ranches argues that the trial court erred

9

in granting Heymann's motion because the doctrine of presumed grant at least raises a fact issue as to ownership.

*Standard of Review*

As we earlier stated, a trial court's summary judgment rulings are reviewed de novo. *Lujan*, 555 S.W.3d at 84; *Laverie v. Wetherbe*, 517 S.W.3d 748, 752 (Tex. 2017). When both sides move for summary judgment and the trial court grants one motion and denies the other, all issues presented should be reviewed by the appellate court, and the appellate court should enter the judgment that the trial court should have entered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

The standard for reviewing traditional summary judgments is well established. In a traditional summary judgment proceeding, the standard of review on appeal asks whether the prevailing movant carried the burden to show that there is no genuine issue of material fact, and that the judgment was properly granted as a matter of law. TEX. R. CIV. P. 166a(c). To resolve this question, we take all evidence favorable to the nonmovant as true; and all reasonable inferences, including any doubts, must be resolved in the nonmovant's favor. *See Fertic v. Spencer*, 247 S.W.3d 242, 248 (Tex. App.—El Paso 2007, pet. denied).

*Applicable Law*

The doctrine of presumed lost deed or grant, also referred to as title by circumstantial evidence, has been described as a common-law form of adverse possession. *Haby v. Howard*, 757 S.W.2d 34, 39 (Tex. App.—San Antonio 1988, writ denied). Its purpose is "to settle titles where the land was understood to belong to one who does not have a complete record title, but [said person] has claimed [ownership for] a long time." *Purnell v. Gulihur*, 339 S.W.2d 86, 92 (Tex. App.—El Paso 1960, writ ref'd n.r.e.). The Supreme Court of Texas observed, "[t]he rule is

10

essential to the ascertainment of the very truth of ancient transactions. Without it, numberless valid land titles could not be upheld." *Magee v. Paul*, 221 S.W. 254, 256-57 (Tex. 1920).

Generally, the doctrine applies when there is a gap in the chain of title and operates to create an evidentiary presumption that a deed may have been executed in favor of the party who has asserted ownership for a long time. *See Humphries v. Texas Gulf Sulphur Co.*, 393 F.2d 69, 75 (5th Cir. 1968). Long ago, the Supreme Court of the United States described the presumption in *Fletcher v. Fuller*:

> The general statement of the doctrine . . . is that the presumption of a grant is indulged merely to quiet a long possession which might otherwise be disturbed by reason of the inability of the possessor to produce the muniments of title which were actually given at the time of the acquisition of the property by him or those under whom he claims, but have been lost, or which he or they were entitled to have at that time, but had neglected to obtain, and of which the witnesses have passed away, or their recollection of the transaction has become dimmed and imperfect . . . .

120 U.S. 534, 551 (1887).

Generally, the application of the presumption is a question of fact, not law. *See Jeffus v. Coon*, 484 S.W.2d 949, 954 (Tex. App.—Tyler 1972, no writ). However, the presumption may be established as a matter of law in cases where the deeds are ancient and the evidence is undisputed. *See Howland v. Hough*, 570 S.W.2d 876, 879-80 (Tex. 1978). In *Howland*, the plaintiff presented a continuous chain of title, except for a gap between the 1845 patent in favor of Irvine until an 1878 deed from Hill to Meissner. *Id.* at 878. There, the defendant could not produce any evidence that any purported heir or successor-in-interest of Irvine had ever asserted a claim to the property. *Id.* at 879. As a result, the Supreme Court of Texas held that "[a]lthough the presumption of a lost grant or conveyance is usually one of fact, it has been sufficiently established in this case to presume it as a matter of law because the deeds are so ancient and the evidence is undisputed." *Id.* at 879-80.

11

The events to which the presumption of lost grant has been applied usually occur when there is a gap in title before the Twentieth century. *See, e.g.*, *Fletcher*, 120 U.S. at 542 (presuming a grant despite a gap in title from 1756 to 1768); *Howland*, 570 S.W.2d at 879 (presuming a grant despite a gap in title from 1845 to 1878); *Baumgarten v. Frost*, 186 S.W.2d 982, 984 (Tex. 1945) (presuming a grant despite a gap in title during the early 1880s).

Relatedly, because of the age in these gaps in title, these cases usually involve some proposed reason for the gap. For example, there are cases where a title was lost or destroyed. *See Magee*, 221 S.W. at 255 (where there was evidence of loss and possible theft of a Texas land script); *Adams v. Slattery*, 295 S.W.2d 859, 861 (Tex. 1956) (where a courthouse containing land records burned down); *Jeffus*, 484 S.W.2d at 953 (where there was evidence of the destruction of recorded deeds during the applicable period of time). There are cases where a party proved they were entitled to a muniment of title but never obtained one. *See Page v. Pan Am. Petroleum Corp.*, 381 S.W.2d 949, 952 (Tex. App.—Corpus Christi 1964, writ ref'd n.r.e.) (during a period in the 1830s, land could be sold in Texas orally, with no deed of conveyance being necessary). There are cases where potentially fraudulent conveyances created chains of title so confusing it was impossible to determine the exact history of the land. *See Humphries*, 393 F.2d at 72. And still there are others where a clerical error resulted in a gap in title. *See Miller v. Fleming*, 233 S.W.2d 571, 572-73 (Tex. 1950) (where a county clerk failed to record part of a general warranty deed); *Baumgarten*, 186 S.W.2d at 985 (where there was evidence of irregularities in land certificates and patents).

*Analysis*

Here, there is no dispute as to the chain of title at least up to 1919, when E.F. Rosenbaum's parents conveyed the Property to him. Thus, this case does not involve what would normally be

12

considered ancient documents in the State of Texas. Also, here, the deed between E.F. Rosenbaum and Balmorhea Livestock is not lost; it is part of the record. In that deed, Rosenbaum conveyed parts of Section 52, Block 13, but did not include the Property in dispute here. While it is not out of the realm of possibility that Rosenbaum could have later conveyed the rest of Section 52, Block 13, Appellant has not alleged that he did so, or given any reason why that deed would not have been recorded and thus be readily available. Furthermore, the absence of any mention of the Property in the Trustee's Deed from 1942 belies any possible assumption that Rosenbaum had ever conveyed the property to Balmorhea Livestock.

To the extent Balmorhea Ranches argues that the exclusion of the Property from the 1926 deed was inadvertent, we cannot agree. It is apparent from the 1917, 1919, and 1926 deeds that the Rosenbaums—E.F. and his parents—were sophisticated parties who took a detailed approach when conveying property. Additionally, the approximately 200 acres from Section 52 were not the only tracts reserved by E.F. Rosenbaum; he also retained personal ownership of part of section 37.

There is no gap or defect in the Property's record title. Heymann's grandfather, E.F. Rosenbaum, acquired the Property in 1917 and 1919. He transferred many of the acquired tracts to Balmorhea Ranches in 1926, but, as stated above, that conveyance did not include the Property. He died intestate in 1963, survived by two living children, who each inherited a one-half interest in the Property. One of those children was Frank Jr.—Ann Heymann's father. But when Frank Jr. died, he left his real property to his then-current wife, Lillian Ross. E.F. Rosenbaum, Sr.'s other child, Maud, died in 1981 and left her estate, including her one-half interest in the Property to a daughter, Nina Sweeney. Nina Sweeney died in 2007, and her one-half interest in the Property was split in two shares under the Texas Estates Code § 201.001 (f)-(h). Under that intestacy law, one share of the interest passed to Sweeney's maternal kindred and one share passed to her paternal

13

kindred. Sweeney's maternal kindred were her three first cousins: Ann Heymann, Joseph Ross, and Stephen Ross. Thus, each of the three of them inherited an undivided 1/12th interest in all of Sweeney's real property in the State of Texas.

To succeed on its motion for summary judgment, Balmorhea Ranches had the burden of proving that the doctrine of presumed grant precluded any claim to the Property by Ann Heymann. A prerequisite for proving the doctrine applied as a matter of law is the presentation of undisputed evidence establishing a gap or defect existed that involved "ancient" deeds. *See Howland*, 570 S.W.2d at 879-80. Here, there is no evidence of such an ancient gap or defect in the chain of title; in fact, Balmorhea Ranches' own claim to ownership and title acknowledges—and depends on— the 1919 conveyance of the Property to E.F. Rosenbaum. Consequently, Balmorhea Ranches did not meet its summary judgment burden. Appellant's fourth, fifth, and sixth issues are overruled. Accordingly, we find no error in the trial court's denial of Balmorhea Ranches' motion for summary judgment.

For the same reason—i.e., the lack of any gap or defect in title that derived from "ancient" documents—we determine that Balmorhea Ranches has not even raised a fact issue as to the potential application of the doctrine of presumed grant. Balmorhea Ranches made clear in its live pleading that its claim to ownership of the Property depended upon the application of this evidentiary doctrine. Further, Balmorhea Ranches so stated in the summary judgment hearing, and in its briefing here, that the application of the doctrine is necessary to support its claim of title. Heymann, on the other hand, has presented evidence of a clear chain of title from the last point in time that ownership of the Property is undisputed by either party—1919—to the present. The decades-long period of time during which no Rosenbaum heir asserted ownership over the property would likely be a relevant fact if the dispute could be traced back to a gap or defect in title from

14

what Texas courts consider ancient documents. But none of the relevant dates here—none earlier than 1919—meet that threshold requirement. Appellant's seventh issue is overruled and we find no error in the trial court's order granting Heymann's summary judgment on the ground of the non-applicability of the presumed grant doctrine.

### B. The anti-suit provision

In its third—and final remaining—issue, Balmorhea Ranches argues the trial court may have denied its motion for summary judgment and granted Heymann's based on her argument that an anti-suit provision of the 1942 bankruptcy court judgment precludes Balmorhea Ranches' claims against Heymann. Even if we agreed with Balmorhea Ranches' interpretation of Heymann's argument before the trial court and further agreed it lacked merit, there is no indication in the trial court's order that its ruling was based on its interpretation of the anti-suit provision. As we discussed under issues four through seven, the trial court could—and should—have granted Heymann's motion and denied Balmorhea Ranches' regardless of the application of any anti-suit provision. As a result, we do not reach this issue. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995) ("The appellate court must affirm the summary judgment if any one of the movant's theories has merit."); *see also* TEX. R. APP. P. 47.1 (an opinion must be as brief as practicable but otherwise address every issue raised and necessary to final disposition of the appeal).

### IV. CONCLUSION

We affirm the trial court's judgment.

GINA M. PALAFOX, Justice

October 24, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.

15